**Janet Irene CARRON, Appellant,**

v.

**STE. GENEVIEVE SCHOOL DISTRICT, Respondent.**

No. 58084.

Missouri Court of Appeals,
Eastern District,
Division Five.

Oct. 23, 1990.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
Dec. 5, 1990.

Application to Transfer Denied
Jan. 9, 1991.

Frank J. Niesen, Jr., St. Louis, for appellant.

John P. Lichtenegger, Chris N. Weiss, Jackson, Robert R. Schwarz, Clayton, for respondent.

CRIST, Judge.

This is a Workers' Compensation case wherein appellant, the employee, appeals the Labor and Industrial Relations Commission of Missouri's award against her employer based upon a 25 percent permanent partial disability to her back and body as a whole. The Commission found no liability on the part of the Treasurer of the State of Missouri as custodian for the Second Injury Fund. We affirm.

Employee, Janet Carron, is a forty-six-year-old woman who is married and has three children. Between the years of 1961 and 1984 she worked on the farm that she owned with her husband. This work involved picking up ten to twelve thousand eggs a day as well as taking care of hogs, maintaining a garden, cleaning and cooking.

Employee injured her back in 1972, and a Dr. Kendig performed a laminectomy at

the level of L–5, S–1. She returned to farm work shortly after the operation. In 1976, she re-injured her back, and Dr. Kendig performed another laminectomy at the level of L–4, L–5. She again returned to her farm duties, although it took her slightly longer to recover. Employee did not see a doctor for any further back problems between 1976 and 1986.

In 1984, the farming operation became economically unfeasible, and employee and her husband sold the farm. They continued living there, however, performing the farm work for the new owners. The debilitating effect of these economic difficulties caused employee to visit a psychiatrist, Marcel T. Saghir, M.D. She had a number of sessions with Dr. Saghir, who aided her through depression and anxiety. She presently takes Xanax, an anti-anxiety medication, on a daily basis, and consults Dr. Saghir approximately every two months.

Also in 1984, employee obtained work with employer, Ste. Genevieve School District, because of her family's growing financial difficulties. This work consisted of sweeping, cleaning, washing tables, and emptying several thirty-nine gallon trash containers after each of five lunch periods.

On April 10, 1986, while lifting a trash barrel, employee re-injured her back. She was treated by Dr. Kendig, and underwent traction, cortisone shots and therapy. Dr. Kendig's discharge summary states: "My impression further is that the physical stress of her employment is basically too much for a back that has had a laminectomy on two separate occasions."

Employer then sent her to see Dr. John Arnot, who admitted her to St. Luke's Medical Center for evaluation and therapy. A lumbar myelogram from St. Luke's taken on June 3, 1987, showed changes due to the laminectomies. Dr. Arnot's ultimate conclusion was: "In my opinion her symptoms preclude her ability to do her manual job, although she can do light work at this time."

CT and x-ray readings from Incarnate Word Hospital on April 6, 1988, indicate the presence of spinal stenosis, degenerative changes, and the possibility of a recurrent herniated disc.

Dr. Schwent, a family doctor, has treated employee's back since September 1987. His comment regarding her back problem is ". . . I feel it is a chronic situation and will be ongoing probably for the remainder of her life."

Dr. Joseph Morrow testified by deposition on behalf of employee. He stated that he saw her on April 6, 1987, when she complained of pain from practically every motion. Tenderness to palpitation existed across the low back with motions out of the normal range. Attempted duck-walking was done with pain. Dr. Morrow's diagnosis was a lumbosacral sprain on two surgical lumbar discs. He rated employee as having a 35 percent permanent partial disability to the lower back prior to the accident, a 20 percent permanent partial disability to the lower back as a result of the present injury, and a 15 percent permanent partial disability due to the chronic depression. He further testified that the combination of all the disabilities resulted in a greater disability than their simple sum. Dr. Morrow stated that employee's return to work could produce a re-aggravation of her symptoms. He also testified that at the time he examined her, she was not in any need of further medical treatment for her back.

Dr. Saghir testified by deposition and described employee's mental state as improved since he began treating her in 1984. However, he stated he believed she would require treatment for many years to maintain her mental stability. Dr. Saghir testified that employee's depression increased after her injury in 1986, but that there was no change in his diagnosis of her condition.

Jeffrey F. Magrowski, a vocational rehabilitation specialist, testified by deposition that employee could only perform unskilled labor, given her educational background and experience. He further stated she could not now perform even sedentary work activities due to her injury. In response to a hypothetical question incorporating employee's education, work skills, injuries, psychiatric background, and limi-

tations, he testified that employee would not be able to compete in the open labor market. He also stated that it was the combination of all these factors that rendered employee unemployable.

Raymond A. Ritter, M.D., testified by deposition for the Second Injury Fund. He assigned employee a disability rating of 10 percent permanent partial disability as the result of the April, 1986 injury. He asserted that employee suffered no additional disability from her prior back injuries. He stated she could return to work with some restrictions on lifting and bending.

Dr. P. Kamath, a psychiatrist, was also deposed on behalf of the Second Injury Fund. He did not find employee depressed or anxious during his examination of her. He indicated that anxieties and depressions tend to be cyclical, and additional examinations might yield different findings. He stated that employee was not in need of any further psychiatric treatment, although he believed she is addicted to her anti-anxiety medication.

Employee testified she cannot return to her job as custodian, and complained of severe, constant pain in her back and legs. She stated she is unable to do any farm work, maintain her garden, or do any strenuous house cleaning. She does vacuum, dust, mop, cook and do dishes, although she must lie down after two hours of the more strenuous work. She does the general paperwork for her family, shops, and is able to drive the car for approximately one hour at a time. She also testified that she sees a doctor every week for treatment of her back. She has purchased a TENS unit for her pain and uses it frequently.

 On appeal, employee asserts the Commission erred in failing to find her permanently and totally disabled. In reviewing the Commission's decision, the court is limited to a determination of whether the Commission's award is supported by competent and substantial evidence on the whole record. *Sellers v. Trans World Airlines*, 776 S.W.2d 502, 503 (Mo.App.1989). All evidence and inferences will be viewed in a light most favorable to the award, and the award will only be

set aside if the Commission's findings are clearly contrary to the overwhelming weight of the evidence. *Id.* An appellate court will not substitute its judgment for that of the Commission even if it would have made a different initial conclusion. *Crum v. Sachs Electric*, 769 S.W.2d 131, 133 (Mo.App.1989).

 The test for permanent total disability in Missouri is employee's ability to compete in the open labor market in that it measures her prospects for returning to employment. *Patchin v. National Super Markets, Inc.*, 738 S.W.2d 166, 167[3] (Mo. App.1987). The central question is whether any employer in the usual course of business would reasonably be expected to employ employee in her present physical condition. *Crum*, 769 S.W.2d at 133. Dr. Ritter testified employee could return to work with some restrictions on lifting and bending. Mr. Magrowski testified employee could not compete in the open labor market. Dr. Morrow testified that returning to work could aggravate employee's symptoms of back pain. Employee continues to keep house for her family, doing the vacuuming, dusting, mopping and cooking. She drives the car, goes shopping, and is able to go up and down stairs. The Commission is the sole judge of the credibility of the witnesses and the weight and value to be given the evidence. *Patchin*, 738 S.W.2d at 167. Here, the Commission gave Dr. Ritter's testimony great weight, and Mr. Magrowski's testimony little weight. The Commission believed employee could work again, with some limits on lifting and bending. These limits do not render employee permanently and totally disabled. *Sellers*, 776 S.W.2d at 504. The findings of the Commission were based on substantial and competent evidence on the whole record, and were not clearly contrary to the weight of the evidence. Point denied.

 Employee also alleges the Commission erred when it disregarded Magrowski's testimony, as this was the only testimony which addressed the issue of whether employee could return to the open labor market. Employee bases her contention on

the rule of evidence which states that administrative agencies may not arbitrarily ignore the testimony of an uncontradicted witness, unless the agency makes a specific finding that the evidence is not credible. *See Stevinson v. Labor & Indus. Rel. Com'n of Mo.*, 654 S.W.2d 373, 374–75[3] (Mo.App.1983); *Stout v. Piedmont Wholesale Grocery*, 729 S.W.2d 49 (Mo.App. 1987). However, Magrowski's testimony is contradicted, so this rule does not apply. Magrowski's testimony that employee could not compete on the open labor market was contradicted by Dr. Ritter's testimony that employee could return to work with some restrictions. Point denied.

■ Employee also complains of the Commission's finding of no prior industrial disability, which relieved the Second Injury Fund of liability. Employee argues her two prior laminectomies constituted an industrial disability which affected her ability to work, and there was no evidence to the contrary. Employee is incorrect.

In order to recover from the Second Injury Fund, a claimant must have had a permanent partial disability preexisting the present injury. Section 287.220, RSMo 1986. This preexisting permanent partial disability is referred to as an industrial disability. *See Wilhite v. Hurd*, 411 S.W.2d 72 (Mo.1967); *Hettenhausen v. Gene Jantzen Chevrolet*, 499 S.W.2d 785 (Mo.1973). An industrial disability is a disability adversely affecting a claimant's ability to work or earning capacity, rather than physical impairment as such. *Wilhite*, 411 S.W.2d at 77.

■ The Commission found that employee failed to establish an industrial disability existing prior to the 1986 injury. The Commission's finding is supported by competent and substantial evidence on the whole record. Employee was able to perform strenuous farm labor on a daily basis, including picking up ten thousand eggs a day subsequent to both back operations. She apparently had no difficulty finding employment with the Ste. Genevieve School District. Employee's own testimony is that employer had no complaints with her performance of this clearly strenuous job before her injury in 1986.

■ The Commission further found that any unevaluated disability existing prior to April 10, 1986 did not combine with the determined disability from the 1986 injury to create liability against the Second Injury Fund. Section 287.220.1, RSMo 1986, provides the Second Injury Fund is liable where "the degree or percentage of disability caused by the combined disabilities [the preexisting partial disability and the subsequent injury compensable by the employer] is greater than that which would have resulted from the last injury...." While Dr. Morrow testified that employee's prior disability and present disability combined to cause additional disability to employee, the Commission clearly did not find this as credible as Dr. Ritter's testimony. Dr. Ritter testified employee suffered no additional disability due to her prior injuries. This testimony, particularly when combined with employee's failure to establish any prior industrial disability to the satisfaction of the Commission constitutes substantial and competent evidence supporting the Commission's finding. Point denied.

■ Finally, employee asserts the Commission erred in ordering future medical needs to be the responsibility of employee. Dr. Morrow testified that employee was not in need of any further medical treatment, other than the continuation of her anti-anxiety medication. Dr. Saghir testified she would not be in need of hospitalization for her anxiety disorder as a result of the injury. Dr. Kamath testified employee was not in need of medical treatment. There was competent and substantial evidence supporting the Commission's finding employee should not receive an award for future medical expenses. Point denied.

Judgment affirmed.

SIMON, P.J., and BRADY, Senior Judge, concur.