Raymond CARROLL, Employee/Co–
Respondent,

v.

LOY–LANGE BOX COMPANY,
Employer/Co–Respondent,

and

Treasurer of the State of Missouri as
Custodian of the Second Injury Fund,
Additional Party/Appellant.

No. 60650.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 28, 1992.

Betsy Levitt, St. Louis, for respondent.

William E. Roussin, Chesterfield, for additional party/appellant.

Charles A. Mogab, Nancy R. Mogab, Mogab & Hughes, St. Louis, for employer/corespondent.

AHRENS, Judge.

In this workers' compensation case, the Treasurer of the State of Missouri as custodian of the Second Injury Fund (appellant) appeals from the compensation award issued by the Labor and Industrial Relations Commission (Commission). We affirm.

Raymond Carroll (claimant) had been employed by Loy–Lange Box Company (employer) since approximately 1963. His main job was taping and bundling boxes. Claimant began treatment for panic attacks in 1971. In 1981, he underwent surgery on his left knee following a work-related accident.

On April 10, 1987, claimant was injured when he slipped and fell onto a metal conveyor at work. Claimant's body hit the track and his left leg hit the frame of the track. A treating physician noted abrasions on the upper portion of claimant's left lower leg. The physician further noted "[t]he leg shows a marked contusion with an extreme amount of swelling." On the physician's recommendation, claimant did not resume work until May 27, 1987. After working for approximately two weeks, claimant was unable to continue due to pain in his lower back and leg.

Dr. Charles Mannis examined claimant and diagnosed: "Status post-lumbosacral strain and contusion of left leg. Possible radiculopathy, left leg." Dr. Mannis ordered physical therapy and advised claimant not to return to work in the interim.

Following claimant's completion of physical therapy and a course in the "Work Entry Program," Dr. Mannis advised claimant in January, 1988, "to try to return to work in his usual capacity. . . ." Dr. Mannis noted, "Unfortunately, if Mr. Carroll is unable to resume his usual occupational duties without significant pain, I would have no further recommendations for treatment in this case." When claimant returned to his job his problems "were worse" and he was unable to work.

Subsequently, various physicians examined claimant and evaluated his physical and mental condition. At the hearing before the Division of Workers' Compensation, claimant testified and the parties submitted depositions, reports, and records of those physicians who examined claimant. The Administrative Law Judge (ALJ) found claimant permanently and totally disabled following the April 10, 1987, accident. The ALJ further found that "the employer-insurer is wholly liable and responsible for payment of this award, and that there is no liability on the Second Injury [Fund]." In support of this finding, the ALJ noted, "It was the uncontradicted testimony that claimant had no previous disability that was industrially disabling."

Upon review, the Commission agreed with the ALJ's finding that claimant is permanently and totally disabled "as he is unable to compete in the labor market." The Commission disagreed, however, with the ALJ's assessment that claimant's condition is solely the result of the 1987 accident. Rather, the Commission concluded, "based upon all of the competent and substantial evidence in the record, that the claimant suffered preexisting permanent partial disability which, when combined with the 1987 work related injury, caused the permanent total disability." The Commission determined there was sufficient evidence "to sustain the finding that the claimant had preexisting industrial disabilities." Because it found claimant's "current disability is greater than the simple sum of the prexisting [sic] disabilities and 1987 injuries, considered independently,"

the Commission determined the Second Injury Fund had liability.

The Commission found employer responsible for thirty-five percent permanent partial disability to claimant's low back, fifteen percent permanent partial disability to the left knee, twenty percent permanent partial disability to the body as a whole for depression, and fifteen percent permanent partial disability to the body as a whole for panic attacks. Thus, the Commission found employer responsible for 304 weeks of permanent partial disability. The Commission directed the Second Injury Fund to pay claimant "the remainder of the compensation that would be due for permanent total disability . . . ."

In his first point, appellant alleges the Commission's ruling that claimant's knee injury was " 'industrially disabling' " was "against the weight of the evidence and the law" and "was not supported by substantial and competent evidence upon the whole record." Appellant asserts that "even considering the evidence in the light most favorable to the Commission's findings, the Commission could not have reasonably reached its ruling and result."

■ In reviewing the Commission's award, this court "is limited to a determination of whether the Commission's award is supported by competent and substantial evidence on the whole record." *Carron v. Ste. Genevieve School Dist.*, 800 S.W.2d 64, 67 (Mo.App.1990). Further, "[a]ll evidence and inferences will be viewed in a light most favorable to the award, and the award will only be set aside if the Commission's findings are clearly contrary to the overwhelming weight of the evidence." *Id.* "An appellate court will not substitute its judgment for that of the Commission even if it would have made a different initial conclusion." *Id.*

■ To recover from the Second Injury Fund, a claimant must have sustained a permanent partial disability preexisting the present injury. § 287.220.1 RSMo (Supp. 1991). "This preexisting permanent partial disability is referred to as an industrial disability." *Carron*, 800 S.W.2d at 68. "An industrial disability is a disability ad-versely affecting a claimant's ability to work or earning capacity, rather than physical impairment as such." *Id.* (citing *Wilhite v. Hurd*, 411 S.W.2d 72 (Mo.1967)).

■ Appellant asserts that "the Commission used no reasoning whatsoever in deciding that the claimant's knee injury equated to the type of preexisting permanent partial disability compensable by the Second Injury Fund." Contrary to this assertion, it is evident that in determining claimant had a preexisting industrial disability, the Commission relied on claimant's testimony, as well as the deposition testimony of Dr. Ronald Shuter.

The Commission noted that when claimant was asked if he had any residual effects from the earlier injury, claimant responded, "Well, I never really thought it was a hundred percent anymore, but I worked on it, you know." The Commission also found persuasive Dr. Shuter's testimony that claimant had twenty-five percent permanent partial disability to his lower left leg at the level of the knee, ten percent of which he concluded was preexisting.

Appellant contends Dr. Shuter's testimony on which the Commission relied conflicted with Dr. Shuter's testimony on cross-examination. However, "[c]onflicts in the evidence are for the Commission to resolve, and we shall disregard any evidence which may support a different conclusion from that reached by the Commission." *Dillon v. General Motors*, 784 S.W.2d 915, 916 (Mo.App.1990). Further, the Commission "is charged with the responsibility of passing upon the credibility of all witnesses and may disbelieve testimony of a witness even if no contradictory or impeaching evidence appears." *Hutchinson v. Tri–State Motor Transit Co.*, 721 S.W.2d 158, 161–62 (Mo. App.1986). Accordingly, Dr. Shuter's testimony, together with claimant's testimony constituted competent and substantial evidence.

■ Appellant argues the evidence of claimant's 1981 knee injury does not meet the standard of "industrially disabling." The Commission, relying on *Stoddard v. Wilson Freight, Inc.*, 651 S.W.2d 152, 158

(Mo.App.1983), concluded, "The fact that the claimant may have been able to return to work and was capable of performing the limited duties of a " 'taper, bundler and ... forklift operator ... and various things'" ... is not dispositive of the issue of whether he suffered from a preexisting " 'industrial disability[.]' " Appellant contends *Stoddard* is distinguishable, because in that case the claimant "testified that after his earlier accident he went back to his work as a truck driver at the same wage rate as before the accident, but subsequent to the accident *he did none of the unloading.*" (Appellant's emphasis). Nothing in the *Stoddard* opinion, however, supports the conclusion that the claimant's work duties changed after the earlier accident, because there is no indication he unloaded trucks prior to that accident. Moreover, the *Stoddard* court found that while the evidence showed the claimant "was fully capable of performing the limited duties of a truck driver," there was also a showing that the claimant had a loss of earning power or earning capacity. *Id.* at 158. The *Stoddard* court concluded, "In the case of an unskilled laboring man, 61 years of age at the time of the accident, with a grade-school education, without training or experience except as a truck driver, the medical evidence ... constituted substantial evidence of a permanent partial disability under the Second Injury Fund statute...." *Id.*

Similarly, given that claimant was 58 years old at the time of the hearing and had twenty-four years' experience and training in performing the limited duties associated with his job at the box company, there was substantial and competent evidence to support the Commission's ruling that claimant's preexisting knee injury was industrially disabling. Point one is denied.

■ Appellant's second point challenges the Commission's ruling with regard to compensation from the Second Injury Fund for claimant's panic attacks. Appellant contends the ruling was "not supported by competent and substantial evidence and was against the overwhelming weight of the evidence and contrary to the

law," because the Commission "completely disregarded the testimony of both psychiatrists" and "relied instead on the testimony of Dr. Eli [Ronald] Shuter, who is a neurologist and not qualified to testify as an expert in the area of psychiatric and psychological disorders."

We will uphold a finding of the commission consistent with either of two conflicting medical opinions if that finding is supported by competent and substantial evidence upon the whole record. *Hutchinson,* 721 S.W.2d at 162. Dr. Voya Ognyanov, a psychiatrist, concluded that at the time of examination, claimant was "totally disabled." Dr. Ognyanov concluded claimant became depressed as a result of his inability to work, and the physician attributed claimant's disability to three factors: preexisting psychiatric panic disorder; physical injury; and depression.

Dr. Shuter, a neurologist, testified that in his opinion, claimant had "several disabling conditions," including post-traumatic depression and panic attacks. Dr. Shuter concluded claimant's panic attacks resulted in permanent partial disability of twenty-five percent of the person, with fifteen percent attributed to the April, 1987, accident and ten percent being preexisting. In Dr. Shuter's opinion, the preexisting disability resulting from the panic attacks would impede claimant's ability to work.

Further, claimant stated that prior to the April, 1987, accident, he missed work "here and there a day or two sometimes" due to his panic attacks. Appellant challenges claimant's statement, noting the absence in the record of supporting attendance records or medical records. However, the credibility of a witness is for the Commission's determination. *Id.* at 161–62.

Thus, considering the testimony of Dr. Shuter, Dr. Ognyanov, and claimant in the light most favorable to the Commission's award, there was substantial and competent evidence that the preexisting panic attacks adversely affected claimant's ability to work or his earning capacity. *See Carron,* 800 S.W.2d at 68.

■ Appellant relies on the testimony of Dr. Wayne Stillings, a psychiatrist, in sup-

port of his position that the Commission's award was against the weight of the evidence. However, any conflicts in the evidence were for the Commission to resolve. *Dillon*, 784 S.W.2d at 916. Because there was competent and substantial evidence to support the Commission's award against the Second Injury Fund with regard to claimant's panic attacks, point two is denied.

Appellant's third point alleges the Commission's ruling "was erroneous as it was not supported by competent and substantial evidence and was against the overwhelming weight of the evidence and contrary to the law for the reason that the evidence adduced at trial did not show that the claimant suffered from any previous disability that was 'industrially disabling,' and hence the Commission should not have placed liability on the Second Injury Fund."

■ Appellant reargues his contention that *Stoddard*, 651 S.W.2d 152, is distinguishable from the present case. Further, appellant argues the present case is on point with a case decided by this court and subsequently transferred to our supreme court. On transfer, the Missouri Supreme Court reviews a case as though on original appeal. Rule 83.09; *Buchweiser v. Estate of Laberer*, 695 S.W.2d 125, 127 (Mo. banc 1985). Accordingly, this court's opinion in a case subsequently transferred is of no precedential effect. *Garrett v. State Dep't of Pub. Health*, 558 S.W.2d 679, 682 (Mo. App.1977). In light of our disposition of points one and two, we find substantial and competent evidence to support the Commission's finding that claimant has an industrial disability. Point three is denied.

The Commission's final award is affirmed.

SMITH, P.J., and KAROHL, J., concur.