**Michael Dean REINER, Employee/Respondent,**

v.

**TREASURER OF the STATE OF MISSOURI as Custodian of the Second Injury Fund, Additional Party/Appellant.**

**No. 61569.**

Missouri Court of Appeals, Eastern District, Division One.

Sept. 8, 1992.

Edward A. Gilkerson, Weier, Hockensmith & Sherby, St. Louis, for appellant.

Charles A. Mogab, John F. Conley, Mogab & Hughes, St. Louis, for respondent.

AHRENS, Judge.

In this workers' compensation case, the Treasurer of the State of Missouri, as custodian of the Second Injury Fund, appeals from the Final Award of the Labor and Industrial Relations Commission (Commission) affirming the Award of the administrative law judge (ALJ) and awarding compensation. We affirm the Commission's ruling.

On February 22, 1989, Michael Dean Reiner (claimant) filed an amended claim for compensation from the Second Injury Fund, alleging injury to his body, back, and legs as a result of an accident occurring in January, 1988. At a hearing before the Division of Workers' Compensation on February 28, 1991, claimant submitted a Stipulation for Compromise Settlement between

claimant and his employer, in which the employer agreed to pay a lump sum of $42,000.00 based upon a thirty-five percent disability of claimant's low back resulting from the January, 1988, injury. The sole issue at the hearing was the liability of the Second Injury Fund for permanent and total disability benefits.

At the time of the hearing, claimant was thirty-eight years old and had completed eleven years of education. Claimant obtained a G.E.D. while serving in the military as a combat engineer immediately following the eleventh grade. After his discharge from the service in 1974, claimant worked in various jobs until 1982 as a manual laborer using heavy equipment. In March, 1982, he sustained a work injury requiring surgery on his lower back. Claimant was under a doctor's care until September, 1982, and was off work until November, 1982, when he returned to work on a two-week job at a drilling rig. He wore a back brace and was able to perform his work, although he suffered from pain.

In February, 1983, claimant began working as a truckdriver, foreman, and laborer; despite the prior injury, he was able to perform the work required by those jobs. In October, 1983, he reinjured his back while bending over and lifting a piece of steel. Claimant lost the use of his right side and was hospitalized for two weeks, where he underwent a surgical procedure involving an injection of chymopapain in his lower back; the injection failed to alleviate his pain. Claimant did not return to work until September, 1987. In the interim, claimant underwent physical therapy and vocational testing. He began job retraining in 1985 and spent six months at a front-end alignment, air conditioning, and brake school. Claimant had difficulty bending, stooping, and lifting, and was unable to locate a job in that field. Claimant underwent vocational testing for a second time, and in August, 1987, began a training course in cable television installation.

Claimant began work installing cable for Walsh & Company (employer) in September, 1987. Claimant testified that while performing the work, he suffered pain be-cause of his prior physical conditions, although it was not severe enough to keep him from working. Claimant stated he was able to perform his job functions with "moderate ease," although he did have difficulty bending, walking, and lifting his ladder off the truck. On January 1, 1988, claimant was injured when he fell from a pole he was climbing to install cable. Claimant testified he fell from a height of five to six feet, landed on his left leg, felt his spine collapse, and fell backwards onto his buttocks.

Claimant made one attempt to return to work following the injury, when he bartended for one day approximately two weeks before the hearing. Claimant testified that he could not continue the work, because the pain was too severe. He filed for Social Security in 1989 and is currently receiving benefits.

Dr. Euguene R. Adelmann, a neurologist, testified by deposition on claimant's behalf. Dr. Adelmann testified that at the time of claimant's examination, claimant walked with difficulty and paced the floor in pain. There was a flattening of the normal lordotic curvature of claimant's back, with tenderness and palpitation over the lumbar area. Claimant's limited ability to flex and extend his back and his performance on a "sciatic stretch test" indicated nerve root irritation. Dr. Adelmann diagnosed claimant as suffering from a fifth lumbar root lesion and "lumbar spinal stenosis," a narrowing of the normal opening through which the spinal nerve roots pass. In Dr. Adelmann's opinion, claimant suffered forty percent permanent partial disability as a result of the 1988 injury, twenty-five percent permanent partial disability from his injury in 1982, and fifteen percent permanent partial disability from his injury in 1983.

Dr. Adelmann testified that the combination of claimant's disabilities rendered him permanently disabled. Dr. Adelmann also stated that claimant's 1988 injury rendered him unable to work, and that claimant suffered significant residual back pain that significantly restricted his daily living activities. In Dr. Adelmann's opinion, claim-

ant would require additional back surgery, although even after such surgery, there would be no guarantee that a patient with the extensive back disease claimant suffers could ever go back to full, manual work. Dr. Adelmann's testimony was the only medical evidence presented at the hearing, although claimant was examined by a doctor for the Second Injury Fund. The Fund's defense consisted only of its cross-examination of claimant at the hearing and its cross-examination of Dr. Adelmann at his deposition.

In his Award on Hearing issued April 9, 1991, the ALJ found that claimant has been permanently and totally disabled since his injury on January 1, 1988, and found the Second Injury Fund liable for the disability. In making his findings, the ALJ specifically referenced claimant's testimony that he could not work and the evidence of claimant's futile attempts to locate work. Pursuant to § 287.480 RSMo 1986, the Fund submitted the case for review by the Commission. After reviewing the evidence, hearing oral argument, and considering the whole record, the Commission on January 16, 1992, found competent and substantial evidence to support the ALJ's award of compensation and issued a Final Award, pursuant to § 286.090 RSMo 1986, affirming and incorporating the ALJ's decision. The Second Injury Fund appeals the Commission's ruling.

Appellate review of a workers' compensation award is governed by § 287.495 RSMo 1986. With respect to this appeal, we must affirm the Commission's award unless the facts found by the Commission do not support the award or unless the record does not contain sufficient competent evidence to warrant the making of the award. We view all evidence and inferences in a light most favorable to the award, and we will set the award aside only if the Commission's findings are clearly contrary to the overwhelming weight of the evidence. *Carron v. Ste. Genevieve School Dist.*, 800 S.W.2d 64, 67 (Mo.App.1990). The Commission is the sole judge of the witnesses' credibility and of the weight and value of the evidence, *Patchin v. National Super Markets, Inc.*, 738 S.W.2d 166, 167

(Mo.App.1987), and we will not substitute our judgment for that of the Commission. *Carron*, 800 S.W.2d at 67. Further, we resolve all doubts as to an employee's right to compensation in favor of the injured employee. *Sansone v. Joseph Sansone Constr. Co.*, 764 S.W.2d 751, 752 (Mo.App. 1989).

■ Where a preexisting permanent partial disability combines with a work-related permanent partial disability to cause permanent total disability, the Second Injury Fund is liable for compensation due the employee for the permanent total disability after the employer has paid the compensation due the employee for the disability resulting from the work-related injury. § 287.220.1 RSMo (Supp.1991); *Brown v. Treasurer of Mo.*, 795 S.W.2d 479, 483 (Mo. App.1990). In this appeal, the Fund contends the Commission erred in awarding claimant compensation because there was insufficient evidence that he suffered from a preexisting permanent partial disability and insufficient evidence that claimant was permanently and totally disabled. We consider each contention in turn.

■ To recover from the Fund, a claimant must have sustained a permanent partial disability, or "industrial disability," preexisting the present injury. § 287.220.1 RSMo (Supp.1991); *Carroll v. Loy–Lange Box Co.*, 829 S.W.2d 86, 88 (Mo.App.1992). An "industrial disability" is "a disability adversely affecting a claimant's ability to work or earning capacity, rather than physical impairment as such." *Carron*, 800 S.W.2d at 68 (*citing Wilhite v. Hurd*, 411 S.W.2d 72, 77 (Mo.1967)). There can be no Second Injury Fund liability if the preexisting disability has not hindered the employee's ability to work or affected his or her capacity to earn a living. *Roby v. Tarlton Corp.*, 728 S.W.2d 586, 588–89 (Mo.App. 1987).

■ The Fund argues that claimant's returning to work after his two previous injuries indicates his prior back condition did not affect his ability to work and earn a living. We disagree. The fact that claimant was able to return to work is not

conclusive of the fact he did not suffer an "industrial disability." *See Stoddard v. Wilson Freight, Inc.*, 651 S.W.2d 152, 158 (Mo.App.1983). There was evidence that claimant was unable to work for four years after his second injury. Further, there was evidence that in performing the work he was able to accomplish after the injuries, claimant suffered pain and a perceptible loss of mobility and flexibility, although he was able to perform the limited duties the jobs required. The record supports the existence of a preexisting permanent partial disability.

■■■ Lastly, the Fund argues there was insufficient evidence that claimant was permanently and totally disabled. As used in the workers' compensation chapter, "total disability" means the inability to return to any employment, not merely the inability to return to the employment in which the employee was engaged at the time of the accident. § 287.020.7 RSMo 1986. The test for permanent total disability is whether, given the claimant's situation and condition, he or she is competent to compete in the open labor market. *Brown*, 795 S.W.2d at 483. The question is whether an employer in the usual course of business would reasonably be expected to hire the claimant in the claimant's present physical condition, reasonably expecting the claimant to perform the work for which he or she is hired. *Id.*

The Fund contends "there was more than sufficient testimony to prove that [claimant] is capable of competing for a job," citing evidence of claimant's vocational testing in 1985, his G.E.D., and his testimony that he received training in measuring distances and tracing power lines for the purpose of cable installation.

■■ Dr. Adelmann testified that claimant was unable to work and suffered significant residual back pain that significantly restricted his daily living activities. The Fund offered no medical evidence to contradict Dr. Adelmann's opinion. "Total disability" does not require that the employee be completely inactive or inert. *Brown*, 795 S.W.2d at 483. In the case of an unskilled worker with limited education and without training or experience except as a manual laborer, the medical evidence in the record supported the Commission's finding of permanent and total disability.

In addition to the medical evidence supporting the Commission's award, claimant testified he suffered "unbearable" pain in his lower back, right hip, and right leg. He testified he has difficulty bending, twisting, lifting, sitting, and walking, and that he has to alternate between sitting, standing, and lying down. Claimant further testified that each day he takes eight to twelve pain pills, a nerve relaxer, and Tagamet for a stomach ulcer. "The testimony of the claimant or other lay witnesses as to facts within the realm of lay understanding can constitute substantial evidence of the nature, cause, and extent of the disability, especially when taken in connection with, or where supported by, some medical evidence." *Patchin*, 738 S.W.2d at 167–68 (quoting *Ford v. Bi–State Dev. Co.*, 677 S.W.2d 899, 904 (Mo.App.1984)).

For all the reasons stated, sufficient competent evidence warrants the award to claimant of permanent and total disability benefits, and the facts found by the Commission support the award.

The Final Award of the Labor and Industrial Relations Commission is affirmed.

CRIST and REINHARD, JJ., concur.