Laura CLOVER, Employee/Appellant,

v.

QUALITY PLASTICS CO.,
Employer/Respondent,

and

Treasurer of the State of Missouri, as custodian of the Second Injury Fund, Additional Party/Respondent.

No. 65821.

Missouri Court of Appeals,
Eastern District,
Division One.

March 7, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 1995.

Application to Transfer Denied
June 20, 1995.

**610**

Dewey L. Crepeau, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., R. Lucas Boling, Asst. Atty. Gen., Jefferson City, for respondent.

CRAHAN, Judge.

Laura Clover ("Claimant") appeals an award of the Labor and Industrial Relations Commission ("Commission") denying her claim for compensation from the Second Injury Fund. The Administrative Law Judge ("ALJ") found that Claimant was permanently and totally disabled and assessed Second Injury Fund liability. Upon review, the Commission modified the award finding Claimant was not permanently and totally disabled and not entitled to Second Injury Fund benefits. We affirm the Commission's determination as to permanent and total disability and reverse and remand the Commission's determination as to permanent partial disability.

On February 19, 1991, Claimant filed an amended claim for compensation from Employer and the Second Injury Fund, alleging injury to her neck as a result of an accident occurring in July 1990, and a pre-existing disability to her back. After a hearing before the Division of Workers' Compensation on May 5, 1993, Claimant submitted a compromise settlement between Claimant and Employer. The ALJ approved the settlement of 25 percent of the body as a whole based on the July 1990 injury. Thus, the sole issue for determination was Second Injury Fund liability.

At the hearing, Claimant testified that she had dropped out of school during the twelfth grade. She subsequently received training and was certified as a medical technician. She also obtained a certified nurses' aide license, as well as a physical therapy license. Claimant's prior work history included owning and operating two residential nursing facilities which catered to elderly and handicapped individuals. She also worked as a nurses' aide for several other nursing homes. It was in 1987, while Claimant was working as a nursing home aide, that she injured her low back while assisting a patient into bed. As a result of that injury, Claimant underwent several surgeries. Claimant testified that her doctor advised her after her back injury not to go back to work at nursing homes because of the amount of lifting that was necessary. Thus, following treatment for her back, Claimant went to work as a private duty aide to an elderly couple. As part of this job, Claimant was required to do light housekeeping, cooking and assist the lady into bed. Claimant worked full-time at this job for two and one-half years before she was fired following a dispute with the couple's daughter.

Claimant then went to work for Employer. Claimant testified that when she applied for the job with Employer, she informed the company that she had previously undergone "major surgery" on her back and was restricted to lifting no more than twenty-five pounds. She testified that a company representative told her that she would be hired anyway, and that she could determine whether the job "worked out" for her. Although Claimant testified that sitting at this job made her stiff, she was able to stand frequently and move around to relieve this stiffness. Claimant also wore her back brace to work, and it caused no interference with her duties. In fact, Claimant's co-workers told her that they were impressed with the way she was performing her job, in light of the fact she had no previous factory experience.

On July 1, 1990, after working only one week, Claimant injured her neck while stacking a box at eye level. She sought medical treatment and went through a program of physical therapy. On July 4, 1990, Claimant attempted to return to work, but quit after only a few hours complaining the pain in her

neck was too great. Claimant ultimately underwent an anterior cervical fusion with a bone graft to correct the problem. After several months, her doctor, Dr. Orth, examined Claimant and found her to have good strength and range of motion in her neck. Thus, he suggested that she return to work on a part-time basis to determine if the work environment would further improve her functioning. Dr. Orth also suggested Claimant see Dr. Ditmore for a second opinion. Dr. Ditmore examined Claimant and concluded that she was "dramatizing her exam at the present time," and he found "nothing objective to confirm any significant neurological problems."

However, Claimant continued to complain of neck pain. She returned to see Dr. Orth, and at his final examination of Claimant, he found that her neck movement was "much improved" and that she had reached maximum medical benefits. This time he encouraged Claimant to inquire into vocational rehabilitation. However, Claimant has not attempted to return to work since July 4, 1990.

Claimant also testified at the hearing regarding her current problems. She indicated that if she stands for an extended period of time, she gets pain down her legs and pressure in the back of her neck. She cannot walk any distance and limits her amount of stair climbing. She indicated she is able to do housework, but must rotate and stagger the activities. She testified that she gave up horseback riding and playing sports with her son after the 1987 back injury. Claimant also indicated that she disposed of her cattle and horses after the 1987 injury and gave up gardening as well.

Dr. Hank Hammons, a chiropractor, testified at the hearing on behalf of Claimant. Dr. Hammons diagnosed Claimant as having a cervical sprain/strain with radiculopathy, and a lumbar sprain/strain with radiculopathy. Over an objection to his qualification to render such an opinion, Dr. Hammons testified Claimant has "30 percent impairment at the level of the neck from the July 1990 injury sustained at Quality Plastics, ... 35 percent impairment of the low back due to the 1987 injury, and that the combination of these two injuries would make it impossible

for Ms. Clover to ever be gainfully employed."

Dr. Andrew McCanse, a board certified physician in surgery and occupational medicine, testified by deposition on behalf of the Second Injury Fund. He opined that Claimant has a 25 percent permanent partial disability relative to the July 1, 1990 neck injury. However, he indicated that he would not restrict Claimant's work in any way because of this injury. He also testified that he did not believe that Claimant had an industrial disability prior to the July 1, 1990 neck injury because Claimant continued to work as a private duty nurses' aide with only occasional pain. Further, she was able to find work with Employer, even after telling it of her back problems. She was also able to perform her work sitting down, and was working without low back problems during the week prior to her neck injury.

The ALJ found Claimant was permanently and totally disabled after the accident of July 1990, and found the Second Injury Fund liable for the disability. After reviewing the evidence, hearing oral argument, and considering the whole record, the Commission modified the award, concluding that Claimant was not permanently and totally disabled and had no pre-existing "industrial disability" to invoke Second Injury Fund liability for permanent partial disability. This appeal followed.

■■■ Appellate review of a workers' compensation award is governed by § 287.495 RSMo 1986. We must affirm the Commission's award unless the facts found by the Commission do not support the award or the record does not contain sufficient competent evidence to warrant the making of the award. We view all evidence and inferences in a light most favorable to the award and we will set the award aside only if the Commission's findings are clearly contrary to the overwhelming weight of the evidence. *Carron v. Ste. Genevieve School Dist.*, 800 S.W.2d 64, 67 (Mo.App.1990). The Commission is the sole judge of the witnesses' credibility and of the weight and value of the evidence, *Patchin v. National Super Markets, Inc.*, 738 S.W.2d 166, 167 (Mo.App.1987), and we will not sub-

stitute our judgment for that of the Commission. *Carron*, 800 S.W.2d at 67.

In her single point on appeal, Claimant urges that the Commission erred in finding no liability on the part of the Second Injury Fund for either permanent partial or permanent total disability because the facts as found by the Commission do not support the Commission's determination that her prior back injuries were not "industrially disabling."

■ Before turning to the merits of these contentions, we take note of this court's recent decision in *Leutzinger v. Treasurer of Missouri*, 895 S.W.2d 591 (Mo.App.E.D. 1995). In *Leutzinger*, we held that the 1993 amendments to § 287.220.1 superseded the former, judicially created "industrially disability" standard for determining the liability of the Second Injury Fund. *Leutzinger*, 895 S.W.2d at 594; *see also Culp v. Lohr Distributing Co.*, 898 S.W.2d 613 (Mo.App.E.D. 1995); *Wuebbeling v. West County Drywall*, 898 S.W.2d 615 (Mo.App.E.D.1995). These amendments are remedial and are to be applied to all cases pending at the time of enactment.[1] *Leutzinger*, 895 S.W.2d at 594; *Culp*, 898 S.W.2d at 614.

■ These changes have no effect on the Commission's denial of permanent and total disability because it is clear from the face of the award that the Commission based this determination on an express finding that Claimant was not permanently and totally disabled and not on its additional finding that the prior back condition was not "industrially disabling." Further, the Commission's determination that Claimant was not permanently and totally disabled was expressly based on its finding that the testimony of Dr. McCanse and Dr. Orth was entitled to greater weight than that of Dr. Hammons, Claimant's chiropractor. Only Dr. Hammons was of the opinion that Claimant was permanently and totally disabled. Drs. McCanse and Orth each testified that Claimant was capable of gainful employment. Thus, the Commission's determination that Claimant is not permanently and totally disabled is supported by substantial evidence and that portion of the award must be affirmed.

■ It is also clear from the face of the award, however, that the Commission's denial of Second Injury Fund liability for permanent partial disability was based on its determination that the prior back injury was not "industrially disabling." Inasmuch as this award was not rendered by the Commission until after enactment of the 1993 amendments to § 287.220.1 RSMo 1994, use of the now superseded "industrial disability" standard was error and requires a remand for reconsideration in accordance with the new standards set forth in § 287.220.1 RSMo 1994.[2]

Accordingly, we affirm the denial of permanent and total disability. We reverse the denial of the claim for permanent partial disability and remand for reconsideration in

1. As explained in *Wuebbeling*, however, although the standard of Second Injury Fund liability set forth in the amendments represents a clear departure from the old "industrial disability" standard applied in recent cases, it does not appear to be a departure from the intent and concepts which prompted the original enactment of § 287.220.1. *See Wuebbeling*, 898 S.W.2d at 620.

2. Although we hold that the "industrial disability" standard is not to be applied on remand, we note that the Commission's reasoning that Claimant suffered no loss of earning power because she was able to obtain a higher paying job following her back injury is both circular and at least arguably inconsistent with the purpose of the Second Injury Fund. It was undisputed that Claimant's doctor had advised her to give up

working at nursing homes because of the heavy lifting involved. If the fact that a claimant was able to find other work precluded recovery from the Fund, there would never be recovery because the Fund can only be held liable upon proof of a second compensable injury due to employment. Moreover, to hold that a claimant's action to qualify herself for better paying employment after an injury can disqualify her from recovery based on a second injury on the new job would, in effect, penalize the claimant and/or the employer for doing precisely what the fund is designed to encourage—*i.e.*, putting employees to work who might otherwise be considered undesirable because of the potential for greater compensation liability exposure due to a preexisting disability. *See generally, Wuebbeling*, 898 S.W.2d at 617–21.

accordance with the standards set forth in § 287.220.1 RSMo 1994.

REINHARD, P.J., and GARY M. GAERTNER, J., concur.