Ples HEDRICK, Claimant/Appellant,

v.

CHRYSLER CORPORATION, Employer,

and

The Treasurer of the State of Missouri As Custodian of the Second Injury Fund, Defendant/Respondent.

No. 67054.

Missouri Court of Appeals, Eastern District, Division Two.

May 23, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 26, 1995.

Susan K. Roach, Daniel A. Ness, Law Offices of Susan K. Roach, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Maria W. Campbell, Asst. Atty. Gen., Jefferson City, for respondent.

PUDLOWSKI, Judge.

Ples Hedrick appeals a decision of the Labor and Industrial Relations Commission denying him compensation from the Second Injury Fund. Because Hedrick settled his claim with his employer, Chrysler Corporation, the sole issue for both the Administrative Law Judge and the Commission was the liability of the Second Injury Fund. The ALJ found Hedrick to be permanently partially disabled as a result of his October 7, 1991 accident. The ALJ found that Hedrick had 30% permanent partial disability of the body as a whole referable to the neck and back, 20% permanent partial disability of the right hand and 15% permanent partial disability of the left hand, the disability in both hands attributable to carpal tunnel syndrome. The Commission reversed the award.

of the ALJ finding it "incredible" that he had any preexisting "industrial" disability and was still able to perform the type of work he did. The Commission erred by using the old "industrial disability" standard with respect to previous injuries, instead of the new standard found in the legislature's 1993 revision and clarification of § 287.220.1 RSMo. We reverse and remand.

Hedrick was employed by Chrysler for 22 years when he sustained the accident on October 7, 1991. For over a year prior to the accident, Hedrick worked in the chassis department, bolting up bumpers. In performing this job, he used two air guns, a small one weighing one to three pounds and a large one weighing 35 to 40 pounds. When a car came overhead, he took two bolts and an air gun, bent underneath the fender, stood up, reached up with the air gun while holding it with both hands, placed the gun over the bolts and bolted them on. He did about sixty procedures per hour, making two trips using both air guns on each task. For the year prior to the accident, Hedrick worked 9–9½ hours per day, six days a week. On the day of the accident, he was working overhead with an air gun tightening bolts, when the gun malfunctioned, picked him up on his toes and threw him backwards. He immediately felt pain in his neck, legs and back.

Prior to this injury, Hedrick had injured his back in 1979 but did not miss any work. In 1981, he underwent a laminectomy on the L5 lamina and continued to have back pain. Hedrick testified that during the ten years prior to the accident, his back bothered him some, but he always worked overtime. He also stated that he only missed a few days of work because of his back. In October, 1990, Hedrick had surgery on his right hand for carpal tunnel syndrome. A doctor told him that he has carpal tunnel syndrome in his left hand but not as severe as in his right. A Chrysler dispensary record showed that he had complained on one occasion shortly before the accident that his fingers on his left hand felt like they were asleep and there was finger popping in that hand with movement.

The ALJ found that Hedrick was permanently partially disabled stating: "I find that claimant is not permanently and totally dis-

abled from competing in the open labor market as a result of the combination of the primary injury with the preexisting conditions. At the date of the primary injury, those preexisting industrial disabilities resided in claimant's back and neck and hands."

The Commission reversed the ALJ's award, denying Hedrick any recovery from the Second Injury Fund. In reversing the ALJ's finding of Second Injury Fund liability, the Commission made the following finding regarding Hedrick's previous disability:

> The foregoing, however, assumed solely for the purposes of discussion that the claimant had a preexisting industrial disability at the time of his work related accident in October, 1991. Such is a prerequisite to finding Second Injury Fund liability. For a preexisting disability to be "industrially" disabling, it must adversely affect the employee's ability to work or his earning capacity, rather than just a physical impairment. *Wilhite v. Hurd*, 411 S.W.2d 72 (Mo.1967); *Roby v. Tarlton Corp.*, 728 S.W.2d 586, 588–589 (Mo.App.1897). We find no such industrial disability in this instance.

\* \* \* \* \* \*

> ... To contend that he had a preexisting "industrial" disability while still able to perform this type of work for that many hours and days is incredible. It is for that reason, that the Commission rejects the contention that the claimant suffered from any preexisting industrial disability at the time of the work accident in October 1991. Thus, there is no Second Injury Fund liability.

■ Hedrick does not appeal the finding that he was not permanently totally disabled. His two points on appeal relate to the Commission's finding that he was not permanently partially disabled, which reversed the award of the ALJ. Points not raised on

appeal are deemed abandoned. *Boyer v. Grandview Manor Care Center*, 793 S.W.2d 346, 347–348 (Mo. banc 1990). Therefore, we need not address the finding that he was not permanently totally disabled.

As this court has recently made clear in *Leutzinger v. Treasurer of Missouri*, 895 S.W.2d 591 (Mo.App.E.D.1995) and its progeny [1], the Commission erred in interpreting and applying the law by using the outmoded "industrial disability" standard in evaluating claimant's preexisting injuries. In *Leutzinger* and its progeny, this court has held that the 1993 amendments to § 287.220.1 superseded the former judicially created "industrial disability" standard for determining the liability of the Second Injury Fund and it is error to apply the outdated standard. *Leutzinger*, at 592–93; *Wuebbeling*, at 620–621; *Culp*, at 614; *Margason*, at 622–623; *Clover*, at 612–613; *Whitt*, at 625. The ALJ entered his Findings of Fact and Rulings of Law on July 15, 1993 and the Commission made its Final Award Denying Compensation on September 12, 1994. The Missouri Legislature superseded the judicial construct of "industrial disability" when it amended § 287.220.1, effective August 28, 1993. The amendments made it clear which preexisting conditions would be considered serious enough to trigger the statute. Laws of 1993, pp. 779–80. With respect to permanent partial disabilities, § 287.220.1 now reads:

> a *preexisting* permanent partial disability whether from compensable injury or otherwise, *of such seriousness as to constitute a hindrance or obstacle to employment or to obtaining reemployment if the employee becomes unemployed*.... (1993 amendments underlined). (Laws of 1993, p. 780).[2]

*Leutzinger* and its progeny have also made clear that these amendments are remedial and should be applied to all cases pending at the time. *Leutzinger*, at 593–94; *Wuebbel-*

1. *Wuebbeling v. West County Drywall*, 898 S.W.2d 615 (Mo.App.E.D., 1995) *Culp v. Lohr Distributing Co.*, 898 S.W.2d 613 (Mo.App.E.D., 1995); *Margason v. Senack Shoes, Inc.*, 898 S.W.2d 621 (Mo.App.E.D., 1995); *Clover v. Quality Plastics Co.*, 898 S.W.2d 609 (Mo.App.E.D., 1995); *Whitt v. Cupples Products*, 898 S.W.2d 623 (Mo.App.E.D., 1995).

2. The statute also sets forth additional threshold tests that must be satisfied as a prerequisite to fund liability where the pre-existing disability and subsequent injury combine to produce permanent partial disability. *Wuebbeling*, at 621.

*ing*, at 621; *Culp*, at 614; *Margason*, at 623; *Clover*, at 612; *Whitt*, at 625; *see also Wilkes v. Missouri Highway and Transportation Commission*, 762 S.W.2d 27, 28 (Mo. banc 1988); *Vaughan v. Taft Broadcasting Company*, 708 S.W.2d 656, 660 (Mo. banc 1986).

■ The Commission should have applied the new standards as set forth by the legislature, effective August 28, 1993, instead of the old "industrial disability" standard created by the courts. The Commission specifically referenced the term "industrial disability," and case law interpreting that standard in its decision. To the extent that the Commission relied on the "industrial disability" standard instead of the new standards set forth by the legislature, this was an error in the application of the law. We reverse and remand for a determination of whether claimant's previous injuries were serious enough to trigger Second Injury Fund liability.

Due to our holding in this case, we do not address the merits of Hedrick's two points on appeal. However, all of the medical testimony in this case, including the testimony of Dr. Walters on behalf of the Second Injury Fund, indicated that Hedrick had a preexisting injury prior to the accident of October, 1991. We do not believe it "incredible" that a worker can have an injury and continue to work although in pain. We find it analogous to the professional athlete who despite nagging, season-long injuries is expected to play and does play through those injuries. Hedrick had only a sixth grade education. He had no other choice but to work while in pain. Although we reverse and remand on other grounds, in light of the recent Western District case which set forth the standard of review for appeals from the Commission, *Davis v. Research Medical Center*, 903 S.W.2d 557, 560–571 (Mo.App.W.D.1995), we would strongly scrutinize any finding of the Commission which reversed the ALJ's decision and went against the uncontradicted medical testimony.

For the foregoing reasons, the award of the Commission is reversed and remanded for reconsideration pursuant to § 287.220.1 RSMo 1994.

WHITE, J., concurs.

SMITH, P.J., concurs in result.