**John ROSE, Claimant/Appellant,**

**v.**

**TREASURER OF MISSOURI as Custodian of Second Injury Fund, Respondent.**

**No. 67134.**

Missouri Court of Appeals,
Eastern District,
Division Two.

May 30, 1995.

Frank J. Lahey, Jr., St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Maria W. Campbell, Asst. Atty. Gen., Jefferson City, for respondent.

PUDLOWSKI, Judge.

John A. Rose appeals the Labor and Industrial Relations Commission's decision denying him compensation from the Second

Injury Fund. Rose does not appeal the portion of the award relating to his employer, Paragon Group, Inc. The sole issue on appeal is the liability of the Second Injury Fund. We reverse and remand.

Rose worked for Paragon Group as a maintenance man at an apartment complex. The job required him to paint apartments and repair electrical and plumbing problems, as well as maintain and clean the buildings and grounds, including snow removal and clean-up. Prior to working for Paragon Group, he had held various jobs including a press loader at a printing company, a shipping clerk, a laundry helper at a hospital, an installer of heating and cooling systems, and apartment maintenance.

In 1981, Rose was diagnosed with a psychiatric condition known as agoraphobia, fear of open places and social contact, and was prescribed Xanax to alleviate the symptoms. In addition, in 1984, while working as a press loader, he sustained an injury to his right arm. The injury, which resulted in entrapment of the right ulnar and median nerves, required surgery. As a result, Rose missed work for over a year and claims to be unable to effectively use his right arm.

On January 4, 1991, while employed by Paragon Group, Rose slipped on ice at the apartment complex while walking toward his truck. Because he was carrying parts and tools, he was unable to get his hands out in front of him as he slipped; his face struck the side of the truck and forced his head back. As he fell to the pavement, his face slid down the truck and his right knee hit the ground.

Rose immediately felt pain in his right knee, neck and head, but foremostly in his mouth and chin. He lost four teeth and his mouth was lacerated. He received a significant amount of dental care to restore his teeth.

Rose attempted to return to work but was unable to because of neck pain which radiated into his left shoulder and arm. The injury eventually required an anterior cervical diskectomy and fusion.

The Administrative Law Judge found Rose to be permanently partially disabled as a result of his January 4, 1991 accident. The ALJ found that Rose had 35% permanent partial disability referable to cervical spine injury, herniated disc and disc bulging. In addition, he found that he had a 10% permanent partial disability of the right knee and permanent partial disability due to lost teeth as a result of the January 4, 1991 accident. He found that the permanent partial disabilities of the cervical spine, his right knee and teeth combined for a total of 44% percent permanent partial disability of the body as a whole resulting from the January 4, 1991 accident. With regard to the preexisting disabilities, the ALJ found that Rose had 27.5% permanent partial disability of his right upper extremity at the elbow preexisting his accident of January 4, 1991. In so finding, the ALJ stated: "This preexisting permanent partial disability is an industrial disability." He also found that Rose did, in fact, suffer from agoraphobia. This condition, according to the ALJ, caused him anxiety, set off panic attacks and rendered him unable to leave his mother's rural home. He found "... these true psychiatric problems may be considered as industrially disabling. *Carroll v. Loy-Lange Box Company,* 829 S.W.2d 86, 89 (Mo.App.1992)." His ultimate finding with regard to the liability of the Second Injury Fund was:

> Based on all of the credible testimony of the employee, the medical and psychological testing presented, I find the employee's preexisting medical and psychological disabilities combine with the injuries and disabilities from the accident of January 4, 1991, to render the employee *permanently and totally disabled.* Therefore, the liability of the employee's permanent and total disability is that of the Second Injury Fund. (emphasis added).

The Commission affirmed the award with respect to the employer and the injuries resulting directly from the accident of January 4, 1991. However, it reversed the portion of the award of the ALJ which found Second Injury Fund liability. The Commission found that the disability in his upper right extremity "... poses few obstacles for this claimant." The Commission found that Rose had had jobs prior to the last accident

which required "... arm mobility, including plumbing, appliance work, heating and cooling repair, concrete construction and apartment maintenance." It also found that he had performed well on a functional capacity evaluation on February 5, 1992 while suffering only minimal discomfort. With respect to the agoraphobia, the Commission found that:

> ... it is quite evident that this claimant was capable of maintaining employment and was able to leave his home and venture into the work place prior to his 1991 accident.
>
> ... it is quite evident, therefore, that if claimant suffered from agoraphobia, it was not significantly disabling prior to the work accident.
>
> We also note that during claimant's work hardening program, there was no indication that the claimant suffered any difficulty as a result of his alleged psychological condition.

Based upon these findings, the Commission concluded that the Second Injury Fund owed no liability to Rose.

However, in making its findings, the Commission erred by using the old "industrial disability" standard with respect to previous injuries.[1] The Commission set out the law relating to the Second Injury Fund's liability as follows:

> The Second Injury Fund's liability is set forth in § 287.220 RSMo 1986. In order to recover from the Fund, a claimant must have had a permanent partial disability preexisting the present injury. Any preexisting disability must be "industrially" disabling, adversely affecting the employee's ability to work or his earning capacity, rather than just a physical impairment. *Wilhite v. Hurd,* 411 S.W.2d 72 (Mo.1967). There can be no Second Injury Fund liability if the preexisting disability has not hindered the employee's ability to work or affected his capacity to earn a living. *Ropy (sic) v. Tarlton Corp.,* 728 S.W.2d 586, 588–589 (Mo.App.1987). Moreover, even if there is a preexisting industrial disability the Fund still is not liable unless the degree or percentage of previous disability combines with the subsequent injury to be greater than the simple sum of the disabilities considered independently. *Carron v. Ste. Genevieve School District,* 800 S.W.2d 64, 68 (Mo. App.1990).

As this court has recently made clear in *Leutzinger v. Treasurer of Missouri,* 895 S.W.2d 591 (Mo.App.E.D.1995) and its progeny,[2] the new standard to be applied in evaluating a claimant's preexisting injuries is found in the legislature's 1993 revision and clarification of § 287.220.1 RSMo. In *Leutzinger* and its progeny, this court has held that the 1993 amendments to § 287.220.1 superseded the former judicially created "industrial disability" standard for determining the liability of the Second Injury Fund and it is error to apply the outdated standard. *Leutzinger,* 895 S.W.2d at 592–593; *Wuebbeling,* 898 S.W.2d at 620–21; *Culp,* 898 S.W.2d at 614; *Margason,* 898 S.W.2d at 623; *Clover,* 898 S.W.2d at 612; *Whitt,* 898 S.W.2d at 625. The ALJ entered his Findings of Fact and Rulings of Law on September 3, 1993 and the Commission made its Final Award Denying Compensation from the Second Injury Fund on October 3, 1994. The Missouri Legislature superseded the judicial construct of "industrial disability" when it amended § 287.220.1, effective August 28, 1993. The amendments made it clear which preexisting conditions would be considered serious enough to trigger the statute. Laws of 1993, pp. 779–80. With respect to permanent partial disabilities, § 287.220.1 now reads:

1. To the extent that the ALJ employed the "industrially disability" standard, he, too, committed error and the same analysis applies. This is true despite the fact that the ALJ and the Commission reached different conclusions. The error is in the application of the standard. However, we review the award of the Commission, not the ALJ. *Young v. Handy Andy,* 831 S.W.2d 947, 948 (Mo.App.E.D.1992).

2. *Wuebbeling v. West County Drywall,* 898 S.W.2d 615 (Mo.App.E.D.1995); *Culp v. Lohr Distributing Co.,* 898 S.W.2d 613 (Mo.App.E.D. 1995); *Margason v. Senack Shoes, Inc.,* 898 S.W.2d 621 (Mo.App.E.D.1995); *Clover v. Quality Plastics Co.,* 898 S.W.2d 609 (Mo.App.E.D. 1995); *Whitt v. Cupples Products,* 898 S.W.2d 623 (Mo.App.E.D.1995).

> A preexisting permanent partial disability whether from compensable injury or otherwise, of such seriousness as to constitute a hindrance or obstacle to employment or to obtaining reemployment if the employee becomes unemployed.... (1993 amendments underlined). (Laws of 1993, p. 780).[3]

*Leutzinger* and its progeny have also made clear that these amendments are remedial and should be applied to all cases pending at the time. *Leutzinger,* 895 S.W.2d at 594; *Wuebbeling,* 898 S.W.2d at 621; *Culp,* 898 S.W.2d at 614; *Margason,* 898 S.W.2d at 623; *Clover,* 898 S.W.2d at 612; *Whitt,* 898 S.W.2d at 625; *see also Wilkes v. Missouri Highway and Transportation Commission,* 762 S.W.2d 27, 28 (Mo. banc 1988); *Vaughan v. Taft Broadcasting Company,* 708 S.W.2d 656, 660 (Mo. banc 1986).

The Commission should have applied the new standards as set forth by the legislature, effective August 28, 1993, instead of the old "industrial disability" standard created by the courts. The Commission specifically referenced the term "industrial disability" and case law interpreting that standard in its decision. To the extent that the Commission relied on the "industrial disability" standard instead of the new standards set forth by the legislature, this was an error in the application of the law. We reverse and remand for a determination of whether claimant's previous injuries were serious enough to trigger Second Injury Fund liability.

Because of our holding we need not address the merits of Rose's two points on appeal. Although we reverse and remand on other grounds, we will scrutinize any finding of the Commission in light of the recent Western District case which set forth the standard of review for appeals from the Commission, *Davis v. Research Medical Center,* — S.W.2d —, No. 49100, Slip op. at 3–25 [1995 WL 237067] (Mo.App.W.D. April 25, 1995).

For the foregoing reasons, the award of the Commission is reversed and remanded for reconsideration pursuant to § 287.220.1 RSMo 1994.

WHITE, J., concurs.

SMITH, P.J., concurs in result.

3. The statute also sets forth additional threshold tests that must be satisfied as a prerequisite to fund liability where the preexisting disability and subsequent injury combine to produce permanent partial disability. *Wuebbeling,* 898 S.W.2d at 621.