George W. STODDARD,
Claimant-Appellant,

v.

WILSON FREIGHT, INC.,
Employer-Respondent,

Transport Insurance Company,
Insurer-Respondent,

Mel Carnahan, Treasurer of Missouri,
Custodian for Second Injury Fund,
Respondent.

No. WD 33316.

Missouri Court of Appeals,
Western District.

March 1, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied May 3, 1983.

Philip C. Ehli, Kansas City, for claimant-appellant.

James H. Horn and Robert E. Pinnell, Kansas City, for respondents Wilson Freight and Transport Ins. Co.

John Ashcroft, Atty. Gen., Jefferson City and James J. McNary, Asst. Atty. Gen., Kansas City, Mel Carnahan, Treasurer of Mo., for respondent.

Before KENNEDY, P.J., and WASSERSTROM and LOWENSTEIN, JJ.

KENNEDY, Presiding Judge.

This is an appeal by claimant George W. Stoddard from a judgment of the circuit court which reversed an award of workers' compensation made by the Labor and Industrial Relations Commission against Stoddard's employer, Wilson Freight, Inc., and its insurer, Transport Insurance Company (which we shall refer to collectively as "employer") and against the Second Injury Fund. We reverse the judgment and reinstate the award of the Commission.

Claimant Stoddard on October 25, 1972, was injured in a one-vehicle truck accident near Lawrence, Kansas. He was driving his employer's truck en route from Kansas City to Topeka. Claimant worked out of his employer's local office in Kansas City, Missouri, his contract of employment was made in Missouri, and his employment was "principally localized" in Missouri. See § 287.110, RSMo 1978. Claimant could file his workmen's compensation claim either in Kansas or Missouri, or, as we shall see, in both. He filed his claim in Kansas. In due time he received $12,000 in a lump sum in pursuance of a compromise settlement with the employer's insurance company, which settlement was approved by a Kansas Workmen's Compensation referee. The settlement hearing was held December 10,

1975, and the $12,000 called for by the settlement and award was paid to the claimant at that time.

On May 12, 1976, he filed a claim for workmen's compensation in Missouri. Section 287.110, RSMo 1978, provides for claims. Still later, November 10, 1976, he amended his Missouri Workmen's Compensation claim to add the Second Injury Fund. The Labor and Industrial Relations Commission upon review found him to be entitled to an award of $13,800 against his employer, from which was deducted the $12,000 received in the Kansas settlement, and an additional $630 healing period compensation previously received by him, leaving a net recovery upon the Missouri claim against the employer the sum of $1,170. The employer was ordered also to furnish medical services.

The Labor and Industrial Relations Commission found also that as a result of a previous injury claimant was suffering from a disability of 40% of the body as a whole, and that he was entitled to permanent partial disability from the Second Injury Fund, in the sum of $5,850, and permanent total disability commencing 210 weeks after October 28, 1972, of $50 per week for the remainder of his life.

Both the employer and the Second Injury Fund appealed to the circuit court, which reversed the award. The basis of the trial court's reversal was that claimant was concluded by the settlement agreement entered into in the Kansas claim, which the court deemed to be a full and final settlement and release of all the claimant's claims growing out of the October 25, 1972, injury. With respect to the Second Injury Fund, the court found that there was no evidence to support the Commission's finding that claimant had any industrial disability at or before his accident of October 25, 1972, which would entitle him to any benefits under the Second Injury Fund.

## CLAIM AGAINST EMPLOYER

We shall first take up the claim of respondent employer that the claimant Stoddard is foreclosed by his settlement of the

Kansas Workers' Compensation claim from pursuing his Missouri Workers' Compensation claim.

1. *Missouri Workers' Compensation claim not barred by Kansas Workers' Compensation award under Full Faith and Credit provision of U.S. Constitution.*

■ The respondent does not dispute the proposition asserted by the appellant, and adopted by the Commission, that a Kansas award (whether based upon trial or upon settlement) raises no full faith and credit bar to claimant's claiming and receiving a Missouri award. *Thomas v. Washington Gaslight Co.,* 448 U.S. 261, 283–84, 100 S.Ct. 2647, 2661–62, 65 L.Ed.2d 757 (1980); *Industrial Commission of Wisconsin v. McCartin,* 330 U.S. 622, 628, 67 S.Ct. 886, 889, 91 L.Ed. 1140 (1947).[1]

2. *Settlement in Kansas Workers' Compensation proceeding did not extend to Missouri Workers' Compensation claim.*

■ The employer says, however, that the settlement entered into between claimant Stoddard and the employer, and approved by the Kansas Workers' Compensation director, constituted a full and final settlement of all workers' compensation claims which Stoddard might have against his employer, growing out of the accident.

We find that the settlement of the Kansas Workers' Compensation claim, approved by the Kansas Workers' Compensation director through Examiner Whitaker, settled only the Kansas claim. It did not include the Missouri claim and is no bar to claimant's pursuit of a workmen's compensation award under the Missouri statutes.

We observe that there was no written contract of settlement between the claimant and the employer. The employer relies altogether upon a liturgy between Examiner Whitaker and the claimant. This occurred in a hearing held December 10, 1975,

attended by the claimant and his attorney, Mr. Wingfield, and by the attorneys for the employer. The case had been partially tried. Examiner Whitaker conducted the following examination of claimant:

EXAMINER WHITAKER: Mr. Stoddard, you understand that if you accept this proposed compromise settlement and I enter an award based upon it, that that award will act as a full, final and complete release of the Wilson Freight Company and its insurance carrier from any further liability insofar as the injuries which you described to me here today?

THE CLAIMANT: Yes.

EXAMINER WHITAKER: And you realize that you have the right to a full and complete trial of this matter before an Examiner?

THE CLAIMANT: Yes.

EXAMINER WHITAKER: And the Examiner, after hearing all of the evidence, could enter an award for greater than the amount offered here today, or for less than this amount offered here today?

THE CLAIMANT: Yes.

EXAMINER WHITAKER: And if in the future you need any hospital or medical treatment for these injuries, you and you alone will be responsible for obtaining it and paying for it?

THE CLAIMANT: Yes.

EXAMINER WHITAKER: Knowing all these things, is it still your desire that I enter the award as proposed?

THE CLAIMANT: Yeah.

\* \* \* \* \* \*

EXAMINER WHITAKER: Based upon the testimony of the claimant and the medical reports previously put into the record, and (sic) award is hereby made in favor of the claimant and against the respondent and its insurance

1. The Commission found that *Overcash v. Yellow Transit Co.,* 352 Mo. 993, 180 S.W.2d 678 (1944), was distinguished from the present case upon the facts. It noted further that *Magnolia Petroleum Co. v. Hunt,* 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943), upon the authority of which *Overcash* was decided, had been pretty much discredited by *Industrial Commission of Wisconsin v. McCartin,* supra. See 4 Larson, Workmen's Compensation Law, §§ 85.20–.40 (1982). *Thomas v. Washington Gaslight Co.,* supra, handed down after the Commission's decision in this case, expressly overruled *Magnolia.* 448 U.S. at 286, 100 S.Ct. at 2663.

carrier, as follows: the sum of $630.00 previously paid as temporary total compensation; and in addition, the hospital and medical expenses previously read into the record, and an additional payment to the claimant of $12,000.00 in one lump sum as a strict compromise of all remaining issues in this case.

Mr. Ramsay, representing the employer, then presented the claimant with a draft. He said: "Mr. Stoddard, I have here Draft Number M1489 from Transport Insurance Company, in the amount of $12,000.00 made payable to Mr. George Stoddard, and you agree to accept this as full, final and complete satisfaction of the award just entered in your name?"

The claimant answered in the affirmative.

Examiner Whitaker was not concerned with any claim but the Kansas claim, the claim which was pending before him and which was actually in the process of trial. If he had specifically added another question, namely, "Do you intend by this settlement to release any claim you may have under the Missouri Workmen's Compensation statutes?", he would have been, with respect to the Missouri claim, a volunteer and a meddler. The examiner was not the agent of the employer, was not speaking in the employer's behalf, and his language cannot be attributed to the employer. Had the case proceeded before the examiner without settlement, the examiner's award would have disposed only of the Kansas claim and would have had no extraterritorial effect. The settlement had no wider application than his award would have had. There is nothing in this record to show that any of the parties contemplated a settlement of any claim but the one pending in Kansas before the Workmen's Compensation Examiner. It cannot be extended beyond that.

■ The scope of a settlement is to be determined by the intent of the parties, ascertained from the language used and from the circumstances surrounding the settlement. It does not extend to matters not intended to be included in its terms.

*Freshour v. Schuerenberg*, 495 S.W.2d 116, 120 (Mo.App.1973); 15A Am.Jur.2d, Compromise and Settlement, § 23 (1976).

The Commission was correct in its award to the claimant against the employer and the insurer and that award is to be reinstated.

## CLAIM AGAINST SECOND INJURY FUND

It is time to turn to the award against the Second Injury Fund. The state treasurer makes two arguments against this award. The first is that it is barred by the statute of limitations, § 287.430, RSMo 1978. The second is that there is no evidence from which the Commission could find that the claimant was suffering a preexisting "industrial disability" at the time of the October 1972 accident.

Claimant in 1970 had been involved in a motorcycle accident which had left him with a shortened right leg and a limited range of motion at the right hip, which was about 50% of flexion. He limped noticeably upon his right leg. The administrative law judge and the Commission found that the overall preexisting disability was 40% of the body as a whole. The Commission found that the combination of the preexisting disability and the disability from the October 1972 injury rendered the employee permanently and totally disabled. It therefore awarded to claimant against the Second Injury Fund 90 weeks of permanent partial disability at $65 a week, totaling $5,850, and a lifetime stipend of $50 per week beginning 210 weeks after October 25, 1972, the date of the second injury.

3. *Second Injury Fund—Statute of Limitations.*

■ The state treasurer first argues that the claim against the Second Injury Fund was barred by the statute of limitations, § 287.430, RSMo 1978. There is no question that the one-year statute of limitations applies to Second Injury Fund claims, as Judge Pritchard has shown us in *Grant v. Neal*, 381 S.W.2d 838, 840 (Mo.1964). The event which begins the running of the stat-

ute of limitations is the injury, or, if later, the last payment made on account of the injury. A payment on account of the injury may include the furnishing of medical treatment by the employer. *Lloyd v. County Electric Co.,* 599 S.W.2d 57, 60 (Mo.App. 1980); *Faries v. ACF Industries, Inc.,* 531 S.W.2d 93, 95 (Mo.App.1975).

■ The claim against the Second Injury Fund was filed November 10, 1976, long after the one-year period beginning with the date of the injury. The Commission in holding that the claim was not barred by the statute of limitations did so on the ground that the $12,000 settlement payment had been made December 10, 1975, within the year preceding the filing of the claim against the Second Injury Fund. The state treasurer does not challenge the Commission's conclusion that the settlement payment was a payment "made on account of the injury," within the meaning of § 287.430, but says that the statute of limitations had run against the employer (and therefore against the Second Injury Fund) before that payment, and that that payment by the employer did not revive the claim against the Second Injury Fund. We note here that as against the employer, a payment made after the expiration of the statute of limitations will revive the claim.[2] *Welborn v. Southern Equipment Co.,* 395 S.W.2d 119, 124 (Mo. banc 1965). Counsel on neither side of this case have cited us to any authority directly ruling upon this point or ruling any analogous situation. It seems implicit in *Grant* that the statute of limitations does not run against the Second Injury Fund until it runs against the employer. The case is so interpreted in Missouri Workers' Compensation Law, The Missouri Bar, § 8.22 (1981), and we so hold.

■ The state treasurer cites us to no authority for his position. He seeks to extrapolate the non-revival rule from *Industrial Accident Board v. Guidry,* 162 Tex. 160, 345 S.W.2d 509 (1961), and from the

endorsement of that case by *Grant,* but we are unable to agree that *Guidry* supports the treasurer's position. We hold that Stoddard's claim against the Second Injury Fund was not barred by the statute of limitations, having been filed within one year after a payment "on account of the injury," and that said payment, if the statute of limitations had run at that time, revived the claim as against both the employer and the Second Injury Fund.

In holding that the payment revived the claim, we do not need to discuss claimant's argument that the statute of limitations had not run at the time of the December 10, 1975 payment, but had been extended by medical treatments furnished by the employer.

4. *Second Injury Fund—preexisting industrial disability.*

■ As a second line of defense, the state treasurer insists that claimant Stoddard suffered no "industrial disability" as a result of the earlier injury. The term "industrial disability" does not appear in the Second Injury Fund statute, § 287.220, RSMo 1978. That statute refers only to a preexisting "permanent partial disability" as activating the Second Injury Fund procedure. The cases, however, have held that the disability must be an "industrial disability." The state treasurer quotes the following definition from *Wilhite v. Hurd,* 411 S.W.2d 72, 77 (Mo.1967), which was quoted in *Hettenhausen v. Gene Jantzen Chevrolet,* 499 S.W.2d 785, 786 (Mo.1973). "The preexisting permanent partial disability necessary to compensation from the Second Injury Fund under Section 287.220, V.A.M.S., relates to disability to work and means 'industrial disability' or loss of earning capacity, rather than physical impairment as such." The state treasurer takes that definition and underlines certain testimony from the record. He emphasizes Dr. Reister's testimony that "George had some limp, he limped a bit with it, but he was able to

---

2. By a 1981 amendment § 287.430, RSMo (Supp.1982), now provides that the statute of limitations (now enlarged to two years) is "one of extinction and not of repose." This lan-

guage apparently removes the basis for the revival rule of *Welborn v. Southern Equipment Co.,* 395 S.W.2d 119, 124 (Mo. banc 1965).

get around, do anything he wanted to do. . . . He was fully capable of doing his job." Claimant Stoddard testified that after the 1970 accident he went back to his work as a truck driver at the same wage rate as before the accident; that he never turned down a load because of his physical condition; that his duties were driving a truck; that he did none of the unloading, but drove the truck from one point to another and then other people would unload it.

The state treasurer says that this testimony shows that the claimant was suffering no "industrial disability" at the time of the 1972 accident, and that there was no evidence that he was suffering an "industrial disability."

We hold, however, that the fact that the claimant could go back to his job of driving a truck, and the fact that he did so at the same wage rate as before, and the fact that he did not miss any work as a truck driver, is not conclusive of the fact he did not suffer an "industrial disability." The evidence cited by the state treasurer shows only that he was fully capable of performing the limited duties of a truck driver. One can conceive of a person with much more extensive physical disabilities and impairments than claimant Stoddard who could give the same testimony as claimant Stoddard gave. Stoddard's claim is not defeated because he lost no *earnings.* His case was made if he showed a loss of earning *power* or earning *capacity.* In the case of an unskilled laboring man, 61 years of age at the time of the accident, with a grade-school education, without training or experience except as a truck driver, the medical evidence summarized above constituted competent and substantial evidence of a permanent partial disability under the Second Injury Fund statute, § 287.220, RSMo 1978. Here was a perceptible loss of agility and a perceptible loss of mobility and flexibility, which could only decrease his earning *power* or earning *capacity* and the Commission's finding to that effect is amply supported by the evidence. The range of types of jobs which he could perform was much narrowed by the earlier injury.

None of the state treasurer's cases are contrary to this holding. In *Hettenhausen, supra,* the preexisting "disability" was the removal of a testicle. The Commission had held that this did not constitute an industrial disability, and the Commission's decision was *affirmed* by the Supreme Court of Missouri. 499 S.W.2d at 786–87. In *Wilhite v. Hurd, supra,* the Commission found on conflicting evidence that the claimant had no preexisting "industrial disability," "even though the Commission might have been justified in making findings other than those it did make," and the Supreme Court *affirmed* the Commission's finding. 411 S.W.2d at 77–78. In *Meilves v. Morris,* 422 S.W.2d 335, 339 (Mo.1968), the Supreme Court held that there was no evidence supporting the Commission's finding of a preexisting industrial disability, but remanded the case to the Commission for taking additional evidence, for neither was it clear that the claimant had not been suffering from a preexisting industrial disability. Some of the language used by Judge Eager in the *Meilves* opinion supports the Commission's holding in this case.

> If the claimant was prevented by bodily infirmities from performing *a part* [emphasis added] of the usual and customary duties of her occupation *or of any other occupation for which she was reasonably suited* [emphasis added] so that her *earning power* was thereby affected, or more specifically if she was *thereby* caused to work only part time,—she was partially disabled, *industrially.*

422 S.W.2d at 338–39.

We hold that the award of the Commission against the Second Injury Fund should be reinstated.

### CONCLUSION

The Commission award is reinstated. The judgment of the circuit court reversing the same is reversed.

All concur.