**Billy J. EVANS,**
**Plaintiff-Appellant-Respondent,**

v.

**MISSOURI UTILITIES COMPANY and Hartford Accident and Indemnity Company, Defendants-Respondents-Appellants.**

**Nos. 13283, 13326.**

Missouri Court of Appeals,
Southern District,
Division Three.

April 30, 1984.

Motion for Rehearing Overruled and to Transfer to Supreme Court Denied May 21, 1984.

Application to Transfer Denied June 19, 1984.

C.H. Parsons, Jr., Dennis P. Wilson, Parsons & Wilson, P.C., Dexter, for plaintiff-appellant-respondent.

James B. Kennedy, Evans & Dixon, St. Louis, for defendants-respondents-appellants.

PREWITT, Judge.

Plaintiff sought Workmen's (now Workers) Compensation benefits from his employer and its insurer. On his appeal he contends that no credit should have been granted to the employer and insurer, against sums due the employee as workmen's compensation benefits, because of payments made to the employee under the terms of a collective bargaining agreement between the plaintiff's union and his employer. The employer and insurer appeal, contending that the circuit court erred in not allowing them a credit for amounts withheld from the payments under that agreement and paid under the Federal Insurance Contributions Act and for withholding of federal and state income tax. The appeals were consolidated.

The credit was allowed under § 287.160.-3, RSMo 1969. It states:

"3. The employer shall be entitled to credit for wages paid the employee after the injury, and for any sum paid to or for the employee or his dependents on account of the injury, except for liability under section 287.140 [medical benefits]." [1]

Plaintiff was injured on October 20, 1977, while working for defendant Missouri Utilities Company. As a result of that injury he was entitled to benefits under the Missouri Workmen's Compensation Law, Chapter 287, RSMo 1969. Missouri Utilities Company's liability under that law was insured by defendant Hartford Accident and Indemnity Company.

Due to the injury plaintiff was unable to work for the forty-four weeks immediately following it. During that period Hartford paid him $95 per week, a total of $4,180 for temporary total disability. Three thousand eight hundred dollars was for the forty-week healing period and $380 for the additional four weeks. All his medical expenses were paid. According to a collective bargaining agreement between Missouri Utilities Company and plaintiff's union, a local of the International Brotherhood of Electrical Workers, plaintiff was entitled to receive from Missouri Utilities Company $10,591.05 during the forty-four weeks. One thousand four-hundred thirty-nine dollars and forty-five cents of this amount was not paid to plaintiff, but withheld because of F.I.C.A. and income tax payments. The relevant section of that agreement is § 5.04. It states:

"In the event any employee is absent from work because of an occupational accident, the employee will be paid 80% of his regular rate for the first three days and 90% of his regular rate of pay for the remainder of time lost less the amount of compensation payments paid the employee by the Company under the Missouri Workman's Compensation Act for his regular scheduled hours as determined by his normal work schedule for all time lost not to exceed 50 weeks regardless of his length of service with the Company.

The employee will be compensated on the above basis for each occupational

1. Section 287.160.3, RSMo Supp.1983, now states: "The employer shall not be entitled to credit for wages or such pay benefits paid to the employee or his dependents on account of the injury or death."

accident; however, such payment shall cease not later than when the employee is physically fit to return to his regular job and his Workmen's Compensation payments under the Missouri Workmen's Compensation Act terminated or the employee is awarded a lump sum settlement, or granted an award for either total or partial impairment."

The Labor and Industrial Relations Commission entered an award on March 4, 1982, which determined plaintiff's compensation benefits as follows:

"Temporary Total Disability
(healing period; 40 weeks at $95.00 per week) .................................... $ 3,800.00
Permanent Partial Disability
(30% right leg at 160 week level;
40% left leg at 160 week level;
plus 10% for multiplicity; 123.2 weeks at $80.00 per week) ................................. 9,856.00
Total Compensation Due .................... 13,656.00
Paid to Date by Insurer .................... 4,180.00
Paid to Date and Credited to Employer ...... 9,285.37
Total Compensation Due and Owing From Employer-Insurer ............................ $ 190.63"

The credit allowed was the amount paid by Missouri Utilities Company to plaintiff following the accident, less $1,305.68 representing "vacation pay". This deduction from the credit is not questioned. The circuit court's judgment, entered April 28, 1983, deducted from the credit allowed by the Commission the $1,439.45 not paid directly to plaintiff, and otherwise affirmed the Commission's award.

Plaintiff claims that defendants should not be allowed a credit because the payments were made because of the express contractual obligation of Missouri Utilities Company to pay more benefits than provided by the Workmen's Compensation Law and were not paid on account of the injury.[2]

Defendants rely on five cases allowing a credit under this section, *Point v. Westinghouse Electric Corporation,* 382 S.W.2d 436 (Mo.App.1964); *Strohmeyer v. Southwestern Bell Telephone Company,* 396 S.W.2d 1 (Mo.App.1965); *Cowan v. Southwestern Bell Telephone Co.,* 529 S.W.2d 485 (Mo.App.1975); *Hull v. Southwestern Bell Telephone Company,* 565 S.W.2d 809

(Mo.App.1978); and *City of St. Louis v. Grimes,* 630 S.W.2d 82 (Mo. banc 1982).

We agree with plaintiff that *Point v. Westinghouse,* supra, is not controlling. There was no showing in *Point* that the employer was obligated to make the payments and the court emphasized that an "employer who has paid an employee at the time of that employee's greatest need more than he was obligated to pay should not be penalized by being denied full credit for the amount paid above the requirements of the [Workmen's Compensation] act as against the amount which might subsequently be determined to be due the employee. To do so would inevitably cause employers to be less generous." 382 S.W.2d at 441. The payments in question here were benefits which the employee received as a result of collective bargaining and the employer was obligated to pay them. These payments were not made out of generosity or concern for the employee but because required by the contract.

The Southwestern Bell cases also do not rule this situation. They, unlike the agreement before us, were based upon a plan with provisions which "specifically negate" any payment of both workmen's compensation and the contractual amounts. See *Strohmeyer v. Southwestern Bell Telephone Company,* supra, 396 S.W.2d at 7. *Cowan v. Southwestern Bell* and *Hull v. Southwestern Bell* involved that same plan. Section 287.100, RSMo 1978, expressly required the credit in *City of St. Louis v. Grimes.* Thus we find none of the cases relied on by defendants controlling.

Plaintiff cites *Pet, Incorporated, Dairy Division v. Roberson,* 329 So.2d 516 (Miss. 1976), and *City of Corpus Christi v. Herschbach,* 536 S.W.2d 653 (Tex.Civ.App. 1976), as supporting him. Because of the differences in the facts and in the statutes involved, those cases are not helpful.

---

**2.** Plaintiff does not contend that the payments were made from insurance proceeds or any other source other than the employer. Had they been, no credit should have been allowed. See § 287.270, RSMo 1969.

It is obvious that the agreement was intended to provide more benefits than the Workmen's Compensation Law provided. It could have been intended to do so in every case where an employee is absent from work because of an "occupational accident", or only in some cases. Where there was no permanent injury and the employee only received temporary total benefits there would not be any additional liability for the employer to use the credit against, in which event the employee would receive additional benefits in excess of that under the compensation law.

However, where there are benefits due for permanent injury, there is an amount on which the credit could be applied and the employee might receive no more than he would have gotten if he had not suffered a permanent injury. Also, if defendants' point on appeal is correct, because of the withholding, plaintiff would personally receive less than an employee not covered by such an agreement. On its face this appears unfair, but, of course, such an agreement might have been sought to alleviate the hardship of not having substantially the same income when receiving only temporary total benefits, and without regard to whether it might affect permanent partial benefits.

In a discussion of issues caused by "contractual supplement to compensation", 4 Larson, Workmen's Compensation Law, § 97.53 (1984), states:

> "One cardinal principle, however, should ordinarily settle most such questions. That principle is the simple proposition that the contractual excess is not workmen's compensation. It performs the same functions, and is payable under the same general conditions, but legally it is nothing more than the fruit of a private agreement to pay a sum of money on specified conditions."

■ 11 Schneider, Workmen's Compensation, § 2319 (3d ed. 1957 & Supp.1973), states that public policy should require a credit since contractual provisions which supplement workmen's compensation "constitute an inducement to malingering, with the consequent uneconomic policy of keeping employees out of employment after they are able to return to their work". We do not agree that public policy requires a credit. We view this as a matter of contract which the employee, or the employee's representative, and the employer are free to agree upon. A better public policy might be to encourage such agreements without credit to the employer, since amounts paid under workmen's compensation are often substantially less than the employee and his family are used to living upon, and the employee would receive additional benefits if he has permanent partial disability. In any event, the policy of this state, as it has now been declared by statute, is that no credit be allowed. See § 287.160.3, RSMo Supp.1983. However, because that change was made after the injury here, we do not consider it.

■ The sole basis argued or that we can perceive for allowing the credit is that § 287.160.3, RSMo 1969, requires it. If that subsection does not mandate the credit, then none should be allowed. As a part of The Workmen's Compensation Law, in interpreting it, we resolve all doubts in favor of the employee. *Kowalski v. M-G Metals and Sales, Inc.*, 631 S.W.2d 919, 923 (Mo.App.1982). In following that principle and applying the facts to § 287.160.3, we come to the conclusion that no credit should have been allowed.

"On account of" and "as a result of" mean the same. *Strohmeyer*, supra, 396 S.W.2d at 5. The payments were not made just "on account of the injury". They were made as a result of the agreement. The injury may have triggered the payments, but it did so only because of the agreement. The payments were made under an agreement where the employee received benefits as a result of his union's efforts. Had the payments been made voluntarily on account of the injury, and for no other reason, then we would be faced with a different situation, apparently one like *Point v. Westinghouse.*

If a legal obligation to make the payments in question does not change the re-

sult as to credits, then § 287.160.3, RSMo 1969, at least when taken literally, would require a credit even if the agreement under which the payments were made expressly provided otherwise. We cannot perceive that as being the legislature's intention, nor is that consistent with the statement in *Strohmeyer* indicating that if the agreement so provided, the employer would not be entitled to a credit. 396 S.W.2d at 7.

We believe that when the statute states that a credit is allowed when a payment is made on account of the injury it contemplates that the injury would be the only reason for the payment. That is not true here as the payment would not have been made were it not for the agreement. It took both the injury and the agreement to entitle plaintiff to the payment.

■ Although the payments here would not have been made had the injury not occurred, they were not paid just as a result of it or only on account of it, as we believe the statute contemplated, but because there was an agreement requiring the employer to pay them. That is true in the Southwestern Bell cases also, but there, by agreement, the employee was not to receive both payments without the employer receiving a credit. We determine that the employer was not entitled to any credit for payments made under the agreement here.

The award and judgment are modified by denying defendants the credit sought for payments made under the collective bargaining agreement and the award and judgment shall now state that plaintiff is entitled to receive an additional $9,476.00 from defendants. As modified, and in all other respects, the judgment and award are affirmed.

GREENE, C.J., CROW, P.J., and HOGAN and MAUS, JJ., concur.

