CITY OF MILWAUKEE, Plaintiff-Respondent,†† ⸜

v.

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS,
Defendant,

MILWAUKEE POLICE ASSOCIATION, Local 21, IUPA, AFL-
CIO, Defendant-Appellant.†

Court of Appeals

*No. 93–1769. Submitted on briefs June 8, 1994.—Decided
April 27, 1995.*

(Also reported in 534 N.W.2d 903.)

††Petition to review filed.
†Petition to cross-review filed.

627

For the defendant-appellant the cause was submitted on the briefs of *Kenneth J. Murray* and *Laurie A. Eggert* of *Adelman, Adelman & Murray, S.C.* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the brief of *Grant F. Langley*, city attorney, and *Roxane L. Crawford*, assistant city attorney.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J. The Milwaukee Police Association (MPA) and the City of Milwaukee have for years included in their collective bargaining agreements a provision allowing police officers injured while on duty to elect to receive eighty percent of their base salary as "injury pay" in lieu of worker's compensation. In a petition filed with the Department of Industry, Labor and Human Relations under § 102.28(2)(c), STATS.,[1] MPA asked the department to revoke the City's self-insurance of its worker's compensation liability. MPA used the administrative proceedings to attack Article 25 of the 1985-86 collective bargaining agreement which prescribed the conditions of eligibility for "injury pay."

After four days of hearings, the department held that certain conditions of eligibility for injury pay contained in Article 25 of the collective bargaining agreement were contrary to the Worker's Compensation Act and thus, in abrogation of public policy and statutes, and unenforceable. On the City's petition for review, the circuit court concluded that the department was without authority under § 102.28(2)(c), STATS., to order the City to discontinue imposing such requirements on police officers who elect injury pay in lieu of worker's compensation. We agree and affirm the circuit court's order.[2]

## I.

Every employer subject to the Worker's Compensation Act must insure payment of worker's compensation benefits unless exempted by the department. Section 102.28(2)(a), STATS. The City is subject to

[1] All references to ch. 102, STATS., refer to WIS. STATS., 1987-88.

[2] The department did not appeal from the circuit court's order.

the Act. The department may exempt from the insurance requirement an employer who shows its financial ability to pay worker's compensation awards, agrees to report faithfully all compensable injuries and agrees to comply with chapter 102 and the rules of the department. Section 102.28(2)(b). Section 102.28(2)(c) provides in part:

> Upon giving 10 days' notice in writing, the department may, after hearing, revoke the exemption for financial reasons or for the failure of the employer to discharge faithfully its obligations according to the agreement contained in the application for exemption. . . .

The state and its political subdivisions may self-insure without further order of the department if they agree to report faithfully compensable injuries and to comply with ch. 102, STATS., and the rules of the department. WIS. ADM. CODE § IND 80.60(3)(a). Any political subdivision electing to self-insure shall first notify the department in writing. Section IND 80.60(3)(b)1. The City gave that notice to the department May 14, 1986, by letter from the city clerk.

The department and MPA are not concerned that the City does not have the financial ability to insure worker's compensation benefits. However, for many years the department has had concerns as to the City's reporting procedures under ch. 102, STATS. The City does not question the department's order insofar as it requires the City to improve its handling and reporting of worker's compensation claims. The City attacks paragraphs 12, 13 and 14 of the order which prevent the City from enforcing Article 25 of the collective bargaining agreement.

## II.

In its motion to intervene in the circuit court, MPA states that its members are "directly affect[ed]" by paragraphs 12, 13 and 14 of the Administrative Law Judge's (ALJ) decision and order. These paragraphs read as follows:

12. The City shall not require any class of employes to follow specialized rules of conduct in order to obtain worker's compensation benefits. In particular:

    a. The City shall not require any person suffering a compensable injury to remain confined in his/her place of residence or confinement following the compensable injury.

    b. The City shall not require any injured employe to make an appointment with and report to the office of a physician chosen by the City to examine that employe. The City shall follow the method prescribed in sec. 102.13 when they believe an examination by a physician of their choice is appropriate.

13. The City shall not send uniformed personnel to an emergency room wherein an injured employe is being treated on an emergency basis in order to obtain information regarding the nature and length of the disability sustained by the injured employe. This provision is in no way to abridge the City's right to obtain medical information from the injured employe's treating physicians.

14. The City is allowed to obtain a medical authorization signed by an injured employe, however,

the medical authorizations utilized by the City shall comply with the provisions of sec. 102.13 which limits medical information to that reasonably related to the condition for which the injured employe is making claim.

These paragraphs preclude the City from enforcing certain conditions of eligibility for injury pay agreed to in Article 25 of the collective bargaining agreement. The ALJ found that these conditions "are manifestly contrary to public policy and the Wisconsin statutes."

In answer to the City's argument that these provisions apply only to officers who elect injury pay, the ALJ concluded that the department "regards payments made in lieu of worker's compensation payments as in fact worker's compensation under the Act." The ALJ did not cite any authority for this statement. He concluded, however, that because injury pay was in fact worker's compensation under the Act, "the constraints placed on the injured employe in order to obtain injury pay are, in fact, constraints imposed on the employe in order to receive worker's compensation payments." The ALJ did not consider whether an officer could agree to such restraints in order to receive injury pay.

The ALJ did deal with the City's deficiencies in reporting claims to the department but concluded that revocation of the City's exemption was not required. He was satisfied that the City was making a good faith effort to improve its performance. However, the ALJ concluded that the exemption would be interlocutory and the department would retain jurisdiction to review the City's performance after six months from the date of the department's order. The City does not attack this part of the department's order.

632

## III.

Whether "injury pay" of a percentage of a police officer's salary is worker's compensation is a question of law which we decide without deference to the circuit court or to the department. This is an issue of first impression and the weight to be given to the department's determination of this question is no weight at all. *See Local No. 695 v. LIRC*, 154 Wis. 2d 75, 83-84, 452 N.W.2d 368, 372 (1990).

We conclude that nothing in the Worker's Compensation Act precludes an employer and an injured employee from agreeing to continue salary which exceeds worker's compensation benefits. In fact, § 102.07(3), STATS., provides in part:

> Nothing herein contained shall prevent municipalities from paying teachers, police officers, fire fighters and other employes full salaries during disability . . . .

Likewise, there is nothing in the Act to prevent a city from paying an injured police officer eighty percent of full salary during disability. We conclude that continuation of salary which exceeds worker's compensation benefits is not contrary to public policy and in fact, is encouraged by the legislature.

The leading authority on worker's compensation, Professor Arthur Larson, explains why supplementation of worker's compensation benefits appears in collectively bargained contracts:

> Dissatisfaction with the level of benefits afforded by statute has led to the appearance of a number of collectively bargained contracts under

which the employer agrees to supplement compensation benefits and bring them up to an agreed level. . . . *There is, of course, no impediment in the compensation act to the contractual provision of supplemental benefits or relaxation of statutory requirements of the act in favor of the employee.*

4 ARTHUR LARSON, WORKMEN'S COMPENSATION LAW § 97.52 (1994) (emphasis added) (citing *Nelson v. Victory Elec. Works, Inc.*, 338 F.2d 994 (4th Cir. 1964); *Baltimore Transit Co. v. Harroll*, 141 A.2d 912 (Md. 1958); *Segura v. Molycorp., Inc.*, 636 P.2d 284 (N.M. 1981)).

Larson also addresses the legal status of contractual supplements to compensation:

It is possible to imagine a number of troublesome legal questions that might emerge from the type of contract in which the employer agrees to pay, say, $250 a week benefits instead of the $200 specified by statute. *One cardinal principle, however, should ordinarily settle most such questions. That principle is the simple proposition that the contractual excess is not workmen's compensation.* It performs the same functions, and is payable under the same general conditions, but legally it is nothing more than the fruit of a private agreement to pay a sum of money on specified conditions. The provisions of a compensation act may be incorporated into the agreement by reference, but the operative force and the ultimate legal character of the arrangement remain that of private contract.

LARSON, § 97.53 (emphasis added) (citing *Board of Educ. v. Chicago Teachers Union*, 427 N.E.2d 1199 (Ill. 1981); *Beth-Elkhorn Corp. v. Lucas*, 670 S.W.2d 480 (Ky. Ct. App. 1983); *Ford Motor Co. v. Dickens*, 700

S.W.2d 484 (Mo. Ct. App. 1985); *Evans v. Missouri Util. Co.*, 671 S.W.2d 812 (Mo. Ct. App. 1984); *Forsman v. Aetna Cas. & Surety Co.*, 590 P.2d 353 (Wash. 1979)). We conclude that the "contractual excess" of "injury pay" which the employer agrees to pay an injured employee is not worker's compensation and may be conditioned upon compliance with the parties' agreement.

## IV.

■ The department erred when it allowed MPA to attack the collectively bargained agreement for injury pay in its petition to revoke the City's right to self-insure its worker's compensation liability. Section 102.28(2)(c), STATS., empowers the department to revoke a self-insurance exemption if an employer cannot pay claims as they arise or if the self-insurer fails to pay claims timely or fails to comply with the department's reporting and record-keeping requirements. *See also* § 102.28(2)(b). However, § 102.28(2)(c) does not empower the department to invalidate provisions of a collective bargaining agreement or employment contract providing for continuation of salary during disability. We therefore affirm the trial court's order.

*By the Court.*—Order affirmed.

DYKMAN, J. (*dissenting*). Pursuant to § 102.28(2)(b), STATS., the Department of Industry, Labor and Human Relations has the power to grant the City of Milwaukee an exemption from its duty to procure worker's compensation insurance. The statute provides that the grant is conditioned upon the City's compliance with the department's rules.

This petition was originally brought before the department under § 102.28(2)(c), STATS.,[1] to revoke the City's exemption from the requirement that it purchase a worker's compensation insurance policy. Though the majority recognizes the nature of the hearing before the department, somehow it gets sidetracked and bases its conclusion on whether "injury pay" is considered worker's compensation benefits. That is not the issue in a revocation proceeding.

The department decided not to revoke the City's exemption, though it conditioned this decision upon the City ceasing practices which the department found to be contrary to public policy. I see no problem with this conditional decision. If the department has the power to revoke the City's exemption, it certainly has the power to take action less onerous than revocation. An agency has "not only those [powers] that are expressly conferred by the statute under which the agency operates, but also those that are fairly implied." *Watkins v. LIRC*, 117 Wis. 2d 753, 761, 345 N.W.2d 482, 486 (1984). The City need not have acceded to the department's conditions. It could have told the department that it refused to comply with the conditions. The department would then have revoked the City's exemption, and the City would have purchased worker's compensation insurance.

We permit a person convicted of crime to refuse probation. *Garski v. State*, 75 Wis. 2d 62, 77, 248

---

[1] Section 102.28(2)(c), STATS., provides in relevant part:

The department . . . may revoke an exemption granted to an employer . . . if the department finds that the employer's financial condition is inadequate to pay its employes' claims for compensation, that the employer has received an excessive number of claims for compensation or that the employer has failed to discharge faithfully its obligations according to the agreement contained in the application for exemption.

N.W.2d 425, 433 (1977). There is no reason why a similar rule should not be applicable in exemption revocation proceedings. Were I writing for the majority, I would conclude that the department could condition its continued grant of an exemption on the City's discontinuing certain practices which the department concluded were contrary to public policy.[2]

---

[2] We are not called upon to define the limits of the types of conditions the department may impose short of revoking the exemption. In this case, the conditions were reasonably related to worker's compensation benefits, consistent with public policy, and not beyond the department's authority.