**Dick WILMETH, Claimant–Respondent,**

v.

**TMI, INC., and State Treasurer as Custodian of the Second Injury Fund, Appellants.**

**Nos. 23525, 23546.**

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 12, 2000.

John C. Banning, Reynolds, Parmele & Gold, P.C., Springfield, for appellants TMI, Inc.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Cara Lee Harris, Asst. Atty. Gen., Springfield, for appellants Second Injury Fund.

Kevin Hays Dunaway, Neale & Newman, L.L.P., Springfield, for respondent.

JOHN E. PARRISH, Presiding Judge.

TMI, Inc., (TMI) and the state treasurer, as custodian of the Second Injury Fund, each appeal a final award of the Labor and Industrial Relations Commission (the commission) to Dick Wilmeth

(claimant)[1] for disability compensation and medical benefits. TMI's appeal is No. 23525. The Second Injury Fund's appeal is No. 23546. The appeals have been consolidated.

The commission's final award adopted the administrative law judge's award and decision. The commission found that "claimant was an employee of [TMI] and the parties were operating under and subject to The Workers' Compensation Law for the State of Missouri." It found:

> On or about March 11, 1994 [claimant] suffered a motor vehicle accident while driving a truck for [TMI]. At the time of the accident [claimant] was hauling an empty trailer from Booneville [sic], Missouri to Crescent, Iowa to pick-up [sic] a load for [TMI]. [Claimant] was operating the truck at the direction of Mr. Van Winkle of [TMI]. The evidence is lacking of any indication that [claimant] was not where he should be, or that he was engaged in activity, [sic] different from which he had been retained to perform.

The commission concluded "that the accident arose out of and in the course of [claimant's] employment with [TMI]"; that "claimant is thus entitled to and [TMI] is responsible for providing benefits under Chapter 287, RSMo." The commission further found, "Similarly, pursuant to Section 287.220.5, RSMo, the Treasurer of Missouri, as the custodian of the Second Injury Fund, is liable for payment of medical care and expenses causally related to the accident of March 11, 1994."

## Scope of Review

In its review this court views the evidence and legitimate inferences that arise from that evidence in the light most favorable to the commission's award. *Johnson v. City of Kirksville,* 855 S.W.2d 396, 398 (Mo.App.1993). It will not substitute its judgment on issues of fact for that of the commission. *Id.* The commission's award will be set aside only if there is no substantial evidence to support it or it is clearly contrary to the overwhelming weight of the evidence. *Id.* All doubts in a workers' compensation case are resolved in the favor of the claimant. *Id.*

## Issues Common to Both Appeals

TMI presents two points on appeal. The Second Injury Fund presents five points. The first point in each appeal raises the same issue. Point II of TMI's appeal and Point III of the Second Injury Fund's appeal are directed to related issues.

Point I in each appeal asserts the commission erred in finding TMI was subject to The Workers' Compensation Law. TMI and the Second Injury Fund contend claimant failed to prove TMI had five or more employees as required by § 287.030.1(3)[2] in order to be deemed an employer for purposes of Missouri's workers' compensation law and thereby be subject to it. *See* § 287.040.

Claimant began working for TMI in 1990. S.G. Van Winkle, who was usually referred to as "Spud," called claimant about driving for TMI. Claimant was in Springfield, Missouri, when he received the call. Mr. Van Winkle called him from Sulphur Springs, Texas. Mr. Van Winkle wanted him to drive for TMI. Claimant had his own truck at the time. He was told to go to Boonville, Missouri, and sign a lease and pick up a trailer that TMI had leased for his use. He did that. A document entitled "Lease and Agreement" was introduced in evidence as the "lease" claimant originally signed. S.G. Van Winkle was designated as "Lessee." The agreement provided for claimant to be compensated by payment of a percentage

---

1. Claimant's name is spelled "Wilmuth" at various places in the record on appeal and in the Second Injury Fund's brief. This opinion uses the spelling in claimant's brief and in his Claim for Compensation.

2. References to statutes are to RSMo 1986, unless otherwise stated.

of gross revenue produced by the trips he made. It was for a term "beginning on Jan, [sic] 2, 1990 and ending on Jan. 2, 1993."

Claimant testified that the agreement pursuant to which he performed services for TMI changed between 1993 and 1994. Claimant explained, "I was working—was working on percentage, and it switched over to mileage when I started driving his—his own truck." The date of claimant's accident was March 11, 1994. It was a one-vehicle accident. Claimant was driving a truck that belonged to TMI. The truck struck a guardrail and embankment.

At the time of the accident, claimant was being paid 30 cents a mile. TMI paid for motels. Claimant was responsible for his own meals. He explained that he usually carried $300 of the company's money for out-of-pocket expense; that when that money was used up, TMI would replace it.

During the time claimant worked for TMI, he had no other sources of income. Claimant would get assignments to haul particular loads from Mr. Van Winkle. He would call Mr. Van Winkle for instructions. Claimant would be gone "from three to as much as six weeks." He called the Texas office once a day to get instructions. He would be told where to go and directed what route to travel.

Claimant was asked if he was aware of other drivers in March of 1994 who were driving or hauling loads for TMI. He answered that he was and named Maynard Miller and Dewey Tomlinson. He added George Cole and himself. He stated that, to his knowledge, each driver was given assignments in the same manner he was. Claimant also had dealings with Louise Van Winkle. He said she occasionally dispatched and was the bookkeeper. At times claimant's son, Kevin Wilmeth, drove for TMI. Paul Smith had also worked for TMI as a driver.

Claimant testified that Mr. Van Winkle told him a disability insurance policy was being provided "in lieu of Workmen's Comp in Texas." Claimant explained, "He told me according to Texas law, he could either have Workmen's Comp or an insurance policy, and he opted for the insurance policy." He said, "Spud figured he was obligated to cover his employees with Workmen's Comp. That's the reason why he done it. That's what he told me."

J. Nicholas Tegenkamp testified by deposition. He is employed with North American Special Risk Associates, Inc. (North American), the managing general underwriter for Monumental Life Insurance Company (Monumental Life). A subsidiary of North American, NASRA TPA, Inc., is third-party administrator on behalf of Monumental Life. Mr. Tegenkamp is vice-president of operations and chief financial officer of North American. He testified that a group-accident policy had been sold to TMI through one of North American's brokers, Templeton Southwest Agency. The agent's name who sold the policy was Bill Helmick. It was effective from April 7, 1993, to October 1, 1994.

Mr. Tegenkamp explained that the policy sold to TMI was not a workers' compensation policy. The policy states that it is an occupational-accident policy, not a workers' compensation policy. He provided two forms submitted by TMI that he referred to as "employee census forms." One was for April 8, 1994. The other was for March 24, 1993. He also provided a copy of TMI's application for insurance. He explained the application would have been completed by the agent who sold the policy and the insured. It was signed by TMI's president, S.G. Van Winkle, and witnessed by the agent, Bill Helmick. The application form includes the following statement:

In applying for this coverage, the applicant acknowledges that:

This policy is an employee benefit and does not provide Workers' Compensation Insurance Coverage.

This policy will not provide a legal defense nor indemnification for any suit

brought against the employer for any reason.

. . .

The applicant has chosen not to subscribe to Workers' Compensation in the State of Texas.

The application form lists "TMI, Inc[.]" in the blank provided for "Employer's Name." It states the "Nature of Business" as "Truck Man." It states there are five full-time employees. It is dated "4–6–93."

The March 24, 1993, employee census form lists the following persons with the following dates of hire:

| | |
|---|---|
| Dick Wilmuth [sic] | 1988 |
| Kevin Wilmuth [sic] | 1988 |
| Maynard Miller | 5–92 |
| Paul D. Smith | 1–93 |
| Ann Louise Van Winkle | 1988 |

The April 8, 1994, employee census form lists the following persons with the following dates of hire:

| | |
|---|---|
| Dick Wilmuth [sic] | 1988 |
| Kevin Wilmuth [sic] | 1988 |
| Maynard Miller | 5–92 |
| Paul Smith | 1–93 |
| Louise Van Winkle | 1988 |
| Dewey Tomlinson | 3–94 |

It also has a column with the heading "Terminated." The date 5–94 appears in that column across from the name "Kevin Wilmuth [sic]." The date 3–93 appears in the column across from the name "Paul Smith."

Bill Helmick, the insurance agent who sold TMI the Monumental Life occupational-accident policy, testified by deposition. He completed the application form for the insurance policy on March 15, 1993, and sent it to Mr. Van Winkle. Mr. Van Winkle signed the form April 6, 1993. The information on the form about the number of employees was obtained from Van Winkle.

The issue with respect to Point I in each appeal is two-fold – the employment status of claimant and the number of persons who worked for TMI. In order to be subject to The Workers' Compensation Law, TMI had to have five employees. TMI argues that claimant was an independent contractor and, even if claimant were determined to be an employee, his evidence did not establish that the other persons who performed work for TMI were employees.

"The facts of each case control whether the claimant is an independent contractor or an employee." *Gaston v. J.H. Ware Trucking, Inc.*, 849 S.W.2d 70, 73 (Mo.App.1993). The issue of whether claimant was an employee and whether TMI was shown to have five employees is a question as to the sufficiency of the evidence. When passing on the sufficiency of the evidence in a workers' compensation case, appellate courts review the record in the light most favorable to the findings of the commission to determine whether there is sufficient competent evidence to support the commission's conclusions. *Harp v. Malone Freight Lines, Inc.*, 16 S.W.3d 667, 671 (Mo.App.2000).

"Where the evidence shows that a person to whom a service is rendered has a right to control the performance of the person who renders the service, the relationship of employer and employee is essentially established." *Ceradsky v. Mid–America Dairymen, Inc.*, 583 S.W.2d 193, 196 (Mo.App.1979). The factors to be examined to determine if a right of control exists are: (1) the extent of control, (2) the actual exercise of control, (3) the duration of the employment, (4) the right to discharge, (5) the method of payment, (6) the degree to which the alleged employer furnished equipment, (7) the extent to which the work is the regular business of the employer, and (8) the employment contract. *Hutchison v. St. Louis Altenheim*, 858 S.W.2d 304, 305 (Mo.App.1993), citing *Howard v. Winebrenner*, 499 S.W.2d 389, 395 (Mo.1973), and *Hinton v. Bohling Van & Storage Co.*, 796 S.W.2d 87, 89 (Mo.App. 1990). No one factor is dispositive, but each is relevant to the issue. *Hutchison, supra.*

■ Claimant's trip assignments came from TMI. He would receive them by telephone from Mr. Van Winkle. Claimant called TMI once a day. He would be told the route to take. He could vary the route if he found a better way. Usually there was only one acceptable route.

Claimant was paid 30 cents per mile. If the route he was told to follow was computer generated, payment was based on the mileage the computer identified. If the route was not computer generated, claimant was paid on the basis of actual miles driven. TMI paid claimant's motel expenses when he traveled. Meals were his expense. Claimant carried TMI's funds for payment of expenses. He usually carried $300 of "company money." Those funds were replenished as needed. There was no evidence that his employment was other than at the will of TMI. TMI's regular business was trucking.

■ TMI, however, reported claimant's earnings by means of a Form 1099 rather than by W–2 as would be used for reporting employee earnings. Likewise, claimant did not report his earnings as wages on his individual income tax return. The commission, however, is not bound by the method TMI used in reporting earnings in ascertaining if an individual was an employee rather than an independent contractor. *See Watkins v. Bi–State Development Agency,* 924 S.W.2d 18, 20, 22 (Mo. App.1996).

TMI had control and exercised control over claimant. There is substantial evidence from which the commission could conclude claimant was an employee of TMI for purposes of The Workers' Compensation Law.

■ There is, likewise, substantial evidence from which the commission could conclude TMI had five employees and were, therefore, subject to The Workers' Compensation Law. Both employee cen-

suses that were introduced in evidence identified at least five employees. These were forms TMI submitted for purposes of obtaining occupational-accident insurance on its personnel. Claimant's accident occurred March 11, 1994. He identified other personnel who were working for TMI in March of 1994. They were drivers Maynard Miller, Dewey Tomlinson and George Cole. Kevin Wilmeth worked for TMI at times. Claimant also explained that Louise Van Winkle was bookkeeper and, sometimes, dispatcher for TMI. Those persons, other than George Cole, were listed on the April 8, 1994, census.[3]

■ Bill Helmick testified that TMI owned three trucks; that some drivers owned their own trucks and leased them to TMI. The fact that a driver owns the truck he or she uses in a job and receives compensation for the truck's use does not prevent him or her from being an employee. *Miller v. Hirschbach Motor Lines, Inc.,* 714 S.W.2d 652, 657–659 (Mo.App.1986). It is the conduct of the parties that establishes the work status of a particular worker. *Id.* at 657. Claimant testified that the other drivers received assignments in the same manner he did. The commission's conclusion that TMI had five employees and was, therefore, subject to The Workers' Compensation Law is supported by substantial evidence. It is not clearly contrary to the overwhelming weight of the evidence. Point I of TMI's appeal and Point I of the Second Injury Fund's appeal are denied.

■ Point II of TMI's appeal and the Second Injury Fund's Point III claim § 287.270, RSMo Cum.Supp.1999, entitled them to credit for amounts paid by Monumental Life. They contend the commission erred in not allowing credit on the award for those amounts.

The commission concluded that the Monumental Life occupational-accident

---

**3.** Bill Helmick testified that a "George Coyle" was an independent trucking operator that sometimes hauled loads for TMI; that he and

TMI "swap[ped] some loads back and forth and so forth."

policy was not a workers' compensation policy. It found:

> The payments of benefits under this group accident insurance policy do not constitute payment of workers [sic] compensation benefits, and are not entitled to full faith and credit. Although the State of Texas may have authorized the issuance of such a policy and have permitted [TMI] to operate legally within that state without workers' compensation insurance, such a policy does not afford to [TMI] workers' compensation protection. Notably, this policy, itself, states that it does not satisfy any legal requirement for Workers' Compensation Insurance.
>
> Further, the State of Texas effectively provided [TMI] with an exemption to the workers' compensation laws by allowing it to provide a group accident insurance policy. This exemption may be effective in the state of Texas but not Missouri. The State of Missouri is not required to subordinate its laws to those of another state. If the State of Missouri wished to give credit and effect to the laws of other states less stringent than Missouri, the legislature could have enacted such legislation. No such legislation is present. Nor is Section 287.270, RSMo applicable to the present case.

The commission concluded:

> [TMI] is an uninsured employer who is liable to the claimant for payment of medical care and disability compensation. The Second Injury Fund is liable to the claimant for payment of medical care pursuant to Section 287.220, RSMo. [TMI] and Second Injury Fund are not entitled to a credit for monies paid by Monumental Life Insurance Company.

Section 287.270 provides, in pertinent part:

> No savings or insurance of the injured employee, *nor any benefits derived from any other source than the employer* or *the employer's insurer for liability under this chapter,* shall be considered in determining the compensation due hereunder.... [Emphasis added.]

TMI and the Second Injury Fund emphasize that the occupational-accident policy of insurance with Monumental Life was paid for by TMI. They argue, therefore, that payments from that policy were derived from TMI; that the commission erred in not allowing credit against workers' compensation benefits for the amount paid by Monumental Life to claimant or for his care.

Credit is allowed for payments made "on account of the injury" rather than as a result of an agreement extraneous to requirements of The Workers' Compensation Law. *Evans v. Missouri Utilities Co.,* 671 S.W.2d 812, 815 (Mo.App.1984); *see also* § 287.160.3.[4] Benefits paid as a result of the occupational-accident policy TMI acquired from Monumental Life were not entitled to consideration in determining compensation due under The Workers' Compensation Law. TMI's Point II and the Second Injury Fund's Point III are denied.

### Other Issues Raised by the Second Injury Fund

Point II of the Second Injury Fund's appeal contends the commission erred in not allowing TMI and the Second Injury Fund credit for insurance benefits paid by Monumental Life because the policy pursuant to which those benefits were paid "was tantamount to a workers' compensation policy in the State of Texas." The Second Injury Fund relies on *Thomas v. Washington Gas Light Co.,* 448 U.S. 261, 100 S.Ct. 2647, 65 L.Ed.2d 757 (1980), as authority for its Point II. It contends *Thomas* permits workers' compensation recovery in more than one state "so long as they are supplementary, and so long as there is no unmistakable state statute to the contrary."

**4.** This requirement now appears at § 287.160.5, RSMo Cum.Supp.1999.

*Thomas* involved a disability claim by a resident of the District of Columbia. The claimant in that case, Mr. Thomas, received an award of disability benefits from the Virginia Industrial Commission under the Virginia Workmen's Compensation Act. Virginia law excluded other recovery. Mr. Thomas later received a supplemental award under the District of Columbia Workmen's Compensation Act although the employer contended that Virginia law excluded any other recovery. The employer argued that the District of Columbia was required to afford the Virginia exclusion full faith and credit and thereby preclude recovery beyond that obtained in Virginia.

The court affirmed the District of Columbia award of supplemental benefits. It held that the Industrial Commission of Virginia could apply only its own state's law; it could not determine a litigant's rights under the law of the District of Columbia. The court held full faith and credit need not be given to a determination the Virginia commission had no power to make. *Id.* at 282–83. The court further held that a state could establish a ceiling on potential liability of companies that transacted business in the state, but could not prevent other states with overlapping jurisdictions from giving effect to more generous compensation policies. *Id.* at 284.

The Second Injury Fund argues that, consistent with *Thomas*, Missouri courts have permitted supplemental recoveries in Missouri when there have been recoveries in other jurisdictions, citing *Huff v. Belford Trucking Co.*, 809 S.W.2d 71, 74 (Mo. App.1991), *Jimenez v. Ford Motor Co.*, 743 S.W.2d 120, 122 (Mo.App.1988), and *Stoddard v. Wilson Freight*, 651 S.W.2d 152 (Mo.App.1983). It reasons, "A basic principle behind all of these holdings is that while a claimant may well be entitled to a recovery in another state after having received benefits in one state, a claimant is limited to only a *supplemental* recovery in the subsequent state."

Under the facts in this case, that argument is a *non sequitur*. There was no workers' compensation claim in Texas. There was no workers' compensation award in Texas. There is no award to supplement.

The circumstances of this case are akin to those in *Shaffer v. St. John's Regional Health Center*, 943 S.W.2d 803 (Mo.App. 1997). In *Shaffer*, an employer sought credit for medical payments made by a health insurance carrier. The health insurance was provided through an employee benefit plan. The employee did not contribute to the cost of the health insurance. *Shaffer* did not allow the employer credit for medical payments from the health insurance provider. *Shaffer* held, "There is no evidence that the medical bills were paid by Employer or its Workers' Compensation insurer. To the contrary, the evidence shows that the medical bills, or at least a portion of the bills, were paid by a medical insurance company which means no credit is due Employer." *Id.* at 808. The rationale of *Shaffer* is apropos here. The Second Injury Fund's Point II is denied.

The Second Injury Fund's Point IV is directed to language in the commission's award directing it and TMI to pay claimant the amount of the medical expenses he had incurred prior to the date of the workers' compensation hearing. The commission found claimant incurred medical care and expenses in the amount of $194,119.95. It further found that claimant's need for medical care was continuing; that Dr. James T. Sheaffer, an orthopedic surgeon, was of the opinion that claimant was a surgical candidate for knee replacement. The commission's award provides:

Accordingly, the employer, [TMI,] and the Second Injury Fund are ordered to pay to the claimant the sum of $194,-119.95, representing past medical care and expenses incurred as a consequence of the accident of March 11, 1994. The employer and Second Injury Fund are further ordered to provide the claimant

with future medical care, which is causally related to the accident of March 11, 1994, including the medical care incurred subsequent to the hearing of December 7, 1998. Unless otherwise agreed to by the parties, Dr. Sheaffer shall be designated as the treating physician relative to the treatment of the claimant's orthopedic concerns.

■ The Second Injury Fund's Point IV asserts the commission erred in ordering payment of the amount of past medical expenses to claimant. It argues that The Workers' Compensation Law permits "payments for medical expenses and there is no evidence that [claimant] has paid any of the medical expenses and therefore the payments should be made directly to the providers as contemplated by the statute." The Second Injury Fund relies on § 287.220.5, RSMo Cum.Supp.1999, and *Morris v. National Refractories & Minerals,* 21 S.W.3d 866 (Mo.App.2000), as support for its Point IV.

The part of § 287.220.5, RSMo Cum. Supp.1999, pertinent to this case provides, "If an employer fails to insure ... funds from the second injury fund may be withdrawn to cover the fair, reasonable, and necessary expenses to cure and relieve the effects of the injury or disability of an injured employee in the employ of an uninsured employer...." It does not direct the manner in which funds withdrawn from the Second Injury Fund are to be paid. A similar argument to that made in support of Point IV was rejected in *Wiedower v. ACF Industries, Inc.,* 657 S.W.2d 71 (Mo.App.1983). *Wiedower* held:

The employer alleges that any payment for medical costs is required by the statute to be made to a public hospital or other institution. However, in cases where the employer has initially denied liability, the courts have affirmed awards of medical costs to the employee. *Hendricks v. Motor Freight Corporation,* 570 S.W.2d 702 (Mo.App.1978);

*Wilson v. Emery Bird Thayer Company,* 403 S.W.2d 953 (Mo.App.1966); *Schutz v. Great American Insurance Company,* 231 Mo.App. 640, 103 S.W.2d 904 (1937).

Although making an award of such costs to the employee may result in a windfall, the insurance company may be entitled to reimbursement from the employee. See *Homan v. American Can Company,* 535 S.W.2d 574, 576 (Mo.App. 1976). The fact that claimant has accepted benefits from another source does not estop him for asserting his rights to compensation under the act. *Davies v. Carter Carburetor, Division of ACF Industries, Inc.* 429 S.W.2d 738, 752 (Mo.1968); *Homan, supra.*

Therefore, the failure of the administrative law judge to order the payments made to a public hospital or other institution, which was affirmed by the Labor and Industrial Relations Commission, was proper.

*Id.* at 75.

*Morris* is, likewise, not determinative. *Morris* is an appeal of a judgment quashing a garnishment. Randall E. Morris obtained a workers' compensation award that included the sum of $46,590.33 for medical expenses. The workers' compensation insurer did not pay that part of the award. The workers' compensation award was certified as a judgment in favor of Mr. Morris. Mr. Morris then attempted to execute on the judgment by garnishment. The insurer successfully moved to quash the garnishment. The judgment granting the motion to quash the judgment was affirmed on the basis that the employer had paid the medical expenses in question; that, therefore, § 287.270, RSMo Cum. Supp.1999,[5] allowed a credit to the employer and its insured for the amount paid.

The employer in *Morris* provided medical benefits to its employees through a self-insurance program. A third-party ad-

5. The provision of § 287.270, RSMo Cum. Supp.1999, applicable in *Morris* is essentially the same as the provision of the 1986 revision.

ministrator processed the employees' health insurance claims and the employer then funded the checks written by the third-party administrator. The employer's human resources manager testified that the employer paid the bills submitted by its employees' medical providers. The court held that "under section 287.270, [the employer and its workers' compensation insurer] were entitled to a credit on workers' compensation benefits for all payments made by employer on employee's medical bills." *Id.* at 869. Those facts differ from the facts in this case. TMI paid no part of claimant's medical bills. Any medical bills that were paid were paid by Monumental Life. Monumental Life was not a workers' compensation insurer. Point IV is denied.

The commission approved "[a]n attorney's fee of 25 percent of the benefits ordered to be paid." It imposed a lien for that amount "against the proceeds until paid." The Second Injury Fund's final point, Point V, is directed to that part of the commission's award. Point V asserts that the commission erred in allowing the attorney fee "as a lien against the payment of medical to be paid from the Second Injury Fund because it has no authority to order such attorney fees in that § 287.220.5[,] RSMo Cum.Supp.1999[,] does not allow the award of attorney fees."

The Second Injury Fund cites no authority in support of its Point V. It states only that nothing in § 287.220.5, RSMo Cum.Supp.1999, allows for payment of an attorney fee from the Second Injury Fund in cases of uninsured employers.

As noted by claimant, § 287.260.1, RSMo 1994, rather than § 287.220.5, RSMo Cum.Supp.1999, is the provision of The Workers' Compensation Law that addresses attorney fees. It permits the commission to allow a lien on compensation payable under Chapter 287 for "reasonable attorney's fees for services in connection with the proceedings for compensation if the services are found to be necessary." It further states that attorney fees for services in connection with workers' compensation claims are subject to regulation by the commission and are limited to those charges "as are fair and reasonable." The statute gives the commission jurisdiction to hear and determine disputes concerning those fees.

 Attorney fees may be based on all parts of an award, including the award of medical expenses. *See Page v. Green*, 758 S.W.2d 173, 176 (Mo.App.1988). As *Page* points out, "[R]estrictions upon attorneys' fees, which prevent an attorney from receiving a reasonable fee often work a hardship upon potential clients because they cannot secure the assistance they need." *Id.* Point V is denied. The award is affirmed in each appeal.

SHRUM and MONTGOMERY, JJ., concur.